2006-NMCA-123

143 P.3d 745

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Matthias SCHACKOW, Defendant–
Appellant.**

**No. 24,137.**

Court of Appeals of New Mexico.

June 21, 2006.

Certiorari Denied, No. 29,946,
Aug. 25, 2006.

Certiorari Denied, No. 29,980,
Sept. 25, 2006.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Chief Judge.

{1} Defendant appeals his judgment and sentence convicting him of assault with intent to commit a violent felony, attempt to commit criminal sexual penetration in the third degree (attempted CSP III), and attempt to commit kidnapping in the second degree (attempted kidnapping II). On appeal, Defendant raises three issues. First, Defendant asserts that two of his convictions violate the prohibition against double jeopardy. Second, Defendant argues that the district court erred by excluding from evidence photographs of Defendant's face after he was beaten by three men, one of whom was a testifying witness. Third and lastly, pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658–60, 712 P.2d 1, 4–6 (Ct.App.1985), Defendant challenges the sufficiency of the evidence to support all of his convictions. We hold that Defendant's convictions for attempted CSP III and assault with intent to commit a violent felony violate the protection against double jeopardy, and vacate the conviction for attempted CSP III. Because we find no merit in Defendant's remaining arguments, we affirm his convictions for attempted kidnapping II and assault with the intent to commit a violent felony.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} One morning in April 2002 between 6:15 and 6:30 a.m., Victim left her apartment complex and began to walk to work on her usual route, which takes her on a dirt path through a small open field, across several streets, through an abandoned parking lot, past several buildings and a McDonald's restaurant to a Wal–Mart store, her place of employment. As Victim was crossing the field, she heard a car driving behind her on the dirt path. Victim turned around; the car stopped next to her, and the driver, Defendant, alone in the car, asked Victim if she wanted a ride. Victim politely declined, explaining that she walks every morning, and proceeded down the dirt path. Defendant followed, stopped the car, and again asked

Victim if she wanted a ride, which she again declined. Defendant stopped a third time to extend the same invitation, then looked at Victim and stated, "[y]ou work at Wal–Mart." Victim responded that she worked at Wal–Mart and continued to walk to work. Victim testified that she recognized Defendant to be a regular customer at Wal–Mart.

{3} Off the dirt path, Defendant stopped Victim again on the street and more aggressively invited her into the car, which she again refused. As Victim was approaching the McDonald's restaurant, Defendant quickly drove up, stopped the car in front of her, and opened the car door, which prevented her from walking any farther. Victim testified that Defendant exited the car, put a gun to her head and told her "stop now[,]" then stated "[s]uck my dick, bitch, now." Victim testified that she refused Defendant, asked him why he had a gun, and asked him to put it down, stating "you are a man, if you want it so bad, take it, take it like a man." Victim testified that Defendant looked at her strangely and threw the gun. Victim stated that she and Defendant began fighting and hitting each other. Victim said they were both then startled by the noise of a loud horn from a truck, and that is when she pushed the car door into Defendant and ran across the street to the lot next to Wal–Mart. Victim met with work associates and security who called the police.

{4} When the police spoke with Victim she was crying and officers noticed that she had scrapes on her forearms and a cut by her right eye. Victim described Defendant and his car to the police, but could not describe the gun because she never actually saw it, but felt something cold held to her head. The police never found the gun.

{5} Later that day, some of Victim's neighbors and her nephew observed a man in a car, who fit Victim's description of the attacker and of his vehicle, sitting at the corner of their street for several minutes. Omar Wright, a neighbor who resides in Victim's apartment complex, testified that he and another man known as Mike recognized the car and the man from Victim's description, got in their own car, and followed Defendant to a nearby supermarket. They determined that

Defendant may have a gun and drove away. Defendant then followed Mr. Wright and Mike back to Victim's apartment building, parked his car, and asked if they were following him. Victim's nephew ran up to Victim's apartment, woke her up, and asked her to come outside to determine if she could identify the man in the car. Victim came out from her apartment and, visibly upset, identified the man to be Defendant, her attacker, and called the police. In the parking lot of the apartment building, the men removed Defendant from the car, beat him, handcuffed him, and waited for the police to arrive.

{6} The State charged Defendant with attempted kidnapping, attempted CSP, and assault with intent to commit a violent felony, all with a firearm enhancement. The jury found Defendant guilty of all charges, but found that the State did not carry its burden of proving that Defendant used a firearm in the commission of the crimes beyond a reasonable doubt. This appeal followed.

## DISCUSSION

{7} On appeal, Defendant argues that two of his convictions violate the constitutional and statutory prohibitions against multiple punishments for the same offense. Defendant also argues that the district court should have admitted photographs of Defendant's beaten face to allow the defense to attack the credibility of a testifying witness who was involved in beating Defendant. Lastly, Defendant challenges the sufficiency of the evidence to support his convictions for attempted kidnapping II, attempted CSP III, and assault with intent to commit a violent felony (CSP). Because insufficient evidence supporting Defendant's convictions may obviate double jeopardy concerns, before addressing Defendant's double jeopardy and evidentiary arguments, we first determine whether Defendant was convicted by sufficient evidence.

## SUFFICIENCY OF THE EVIDENCE

{8} Defendant argues pursuant to *Franklin* and *Boyer* that his convictions for attempted kidnapping II, CSP III, and assault with intent to commit CSP are not supported by sufficient evidence. In making this determination, we first view the evidence

in the light most favorable to the verdict, then determine as a matter of law "whether the evidence viewed in this manner could justify a finding by any rational trier of fact that each element of the crime charged has been established beyond a reasonable doubt." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994) (internal quotation marks and citation omitted). We do not weigh evidence or substitute our judgment for that of the trial court so long as the jury was presented with "such relevant evidence as a reasonable mind might accept as adequate to support [its verdict]." *State v. Salgado*, 1999–NMSC–008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted); *accord State v. Mora*, 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789. "Jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." *State v. Smith*, 104 N.M. 729, 730, 726 P.2d 883, 884 (Ct.App.1986).

■ {9} In the present case, for the charge of assault with intent to commit CSP, the jury was instructed to consider whether Defendant tried to touch or apply force to Victim by grabbing her and trying to force her into a car or trying to force her to commit fellatio in a rude, insolent, or angry manner with the intent to touch or apply force to Victim. For the same offense, the jury could alternatively find that Defendant grabbed at Victim and tried to force her into a car or tried to force her to commit fellatio, which caused Victim to believe Defendant was about to intrude on Victim's bodily integrity or personal safety by touching or applying force to her in a rude, insolent, or angry manner; a reasonable person in Victim's circumstances would have held the same belief; and Defendant intended to commit CSP on Victim.

{10} Our review of the evidence presented below indicates that the jury could reasonably find Defendant guilty of assault with intent to commit CSP. Victim testified that Defendant followed her to work, repeatedly asking her to get in the car, opened the car door to stop her movements, threatened her by holding to her head a cold object she believed to be a gun, and demanded, "suck my dick, bitch, now." She further testified that Defendant proceeded to physically fight with her to force fellatio, resulting in Victim's cuts and bruises, as observed by police. By Defendant's own statement to Victim, his violent conduct toward her was designed with the purpose of forcing her to engage in fellatio. Defendant's dedicated efforts to engage Victim, ultimately culminating in his threatening manner and statement to Victim, constitutes sufficient evidence that a reasonable person under these circumstances would have believed that Defendant was going to intrude on her bodily integrity and personal safety in a rude, insolent or angry manner. Viewing the evidence in the light most favorable to support the verdict, we hold that sufficient evidence was presented to support this conviction.

■ {11} For the charge of attempted kidnapping II, the jury was instructed to consider whether Defendant attempted to take, restrain, confine or transport Victim by force, intimidation, or deception, and whether Defendant intended to hold Victim against her will "to inflict death, physical injury or a sexual offense on [her]." *See* NMSA 1978, § 30–4–1(A)(4) (2003). For the charge of attempted CSP III, the jury was instructed to consider whether Defendant attempted to cause Victim to engage in fellatio and did so by physical force or physical violence, or whether Defendant used threats of physical force or physical violence against Victim and Victim believed that Defendant would carry out the threat. *See* NMSA 1978, § 30–9–11(A), (E) (2003). As to the incomplete nature of the crimes, the jury was instructed to consider whether Defendant intended to commit each crime and began to do an act that constituted a substantial part of each crime, but failed to complete them.

{12} Our review of the evidence indicates that the jury could also reasonably find Defendant guilty of these inchoate offenses. Defendant's actions in opening the car door to stop her from walking to work, holding the object to her head in a threatening manner, demanding fellatio, and physically struggling with her to force his demand, constitutes sufficient evidence that Defendant intended to restrain or force Victim to perform fellatio.

We hold that, although incomplete, Defendant's actions constitute a substantial part of kidnapping and CSP.

{13} Alternatively, the jury could also reasonably find sufficient evidence to support Defendant's guilt of attempted kidnapping by deception. The jury could reasonably infer from Victim's testimony and Defendant's later attack on her that he unsuccessfully attempted to give Victim a ride to work, while harboring a secret intent to force her to engage in fellatio. *See State v. Jacobs*, 2000–NMSC–026, ¶ 25, 129 N.M. 448, 10 P.3d 127 (holding that evidence that the defendant offered the victim a ride home from the mall with a different intent in mind constitutes sufficient evidence of kidnapping by deception); *see also State v. Barber*, 2004–NMSC–019, ¶ 33, 135 N.M. 621, 92 P.3d 633 (stating that we indulge all reasonable inferences from the evidence whether of a circumstantial or direct nature to support the verdict). For these reasons, we hold that Defendant was convicted of attempted kidnapping II and attempted CSP III by sufficient evidence.

## DOUBLE JEOPARDY

{14} Defendant raises the issue of whether double jeopardy protection renders any of his convictions invalid. Specifically, Defendant maintains that his conviction for attempted kidnapping II was subsumed within his conviction for attempted CSP III. Defendant also argues that his conviction for assault with intent to commit CSP was subsumed within either his conviction for attempted CSP III or his conviction for attempted kidnapping II. We address each of Defendant's convictions for possible double jeopardy violations.

## STANDARD OF REVIEW

{15} Whether Defendant's convictions constitute "multiple punishment for the same offense as barred by the double jeopardy clause is a question of legislative intent, which we review de novo." *State v. Franco*, 2005–NMSC–013, ¶ 5, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks omitted).

## DISCUSSION

{16} "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *State v. DeGraff*, 2006–NMSC–011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). Defendant raises a multiple punishment, double-description issue, arguing that his convictions, charged under different statutes, are based on the same conduct. In double-description cases, we consider whether Defendant is "charged with violations of multiple statutes that may or may not be deemed the same offense for double jeopardy purposes." *Swafford v. State*, 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). First, we determine "whether the conduct underlying the offenses is unitary, *i.e.*, whether the same conduct violates both statutes." *Id.* at 13, 810 P.2d at 1233. If the conduct is unitary, we then determine whether the legislature intended to create separately punishable offenses based on the statutes at issue. *Id.* at 14, 810 P.2d at 1234; *accord Franco*, 2005–NMSC–013, ¶ 5, 137 N.M. 447, 112 P.3d 1104. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Swafford*, 112 N.M. at 13, 810 P.2d at 1233. We begin by considering Defendant's conviction for attempted CSP III and assault with intent to commit CSP. We then address Defendant's conviction for attempted kidnapping II.

## ATTEMPTED CSP III AND ASSAULT WITH INTENT TO COMMIT CSP

{17} The first step in our analysis is to determine whether Defendant's conduct in committing attempted CSP III and assault with intent to commit CSP was unitary. Concluding that Defendant's conduct was unitary, we then address whether the legislature intended multiple punishments for such conduct.

## UNITARY CONDUCT

{18} In determining whether conduct is unitary, we consider whether Defendant's acts are separated by "sufficient

indicia of distinctness." *Id.* at 13–14, 810 P.2d at 1233–34. In making this determination, we look at whether the acts in question were separated in time and space, the quality and nature of the acts, and the objectives and results of the acts. *State v. Mora,* 2003–NMCA–072, ¶ 18, 133 N.M. 746, 69 P.3d 256; *accord State v. Meadors,* 121 N.M. 38, 50, 908 P.2d 731, 743 (1995). We also consider "whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *Franco,* 2005–NMSC–013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted). The conduct question "depends to a large degree on the elements of the charged offenses and the facts presented at trial." *Swafford,* 112 N.M. at 13, 810 P.2d at 1233.

■ {19} The facts presented at trial indicate that Defendant's conduct in committing attempted CSP III and assault with intent to commit CSP was unitary. The convictions for both crimes were based on the following conduct. Defendant stopped his car, blocking Victim's path with his car door. Defendant held something to Victim's head, which she believed to be a gun, ordered Victim to perform fellatio on him, and fought unsuccessfully with her to force her compliance. This single set of facts formed the basis for Defendant's conviction of both crimes. Both convictions required that Defendant have an intent to commit CSP. The facts available to support this intent for both convictions was Defendant's demand that Victim perform fellatio at what Victim believed to be gunpoint. Both crimes also required facts to establish that Defendant used physical force or violence, or threats of physical force or violence, in causing Victim to engage in a sex act. The overt acts constituting the use of physical force or threats were Defendant's physical altercation with Victim in an attempt to force fellatio. The only time Defendant attempted to cause Victim to engage in a sex act and used physical force or violence, or threats of physical force or violence as required for attempted CSP III, was the same time he assaulted her with the intent to force her to commit fellatio. These acts occurred simultaneously, when Defendant stopped his car, demanded fella-

tio, and attempted to physically restrain Victim to further his demand.

{20} There is no sufficient indicia of distinctness between these acts. Defendant's acts were not separated by time or space, but rather occurred simultaneously. Defendant's objectives and results in both attempted CSP III and assault with intent to commit CSP were for the singular purpose of forcing Victim to commit fellatio. Furthermore, based on the facts presented at trial, we do not think the jury could have inferred independent factual bases for attempted CSP III and assault with intent to commit CSP. *See Franco,* 2005–NMSC–013, ¶ 7, 137 N.M. 447, 112 P.3d 1104. In sum, the same set of facts established at trial formed the basis for both of these convictions. Therefore, we conclude that Defendant's conduct was unitary. Having determined that Defendant's conduct was unitary, we must next decide whether the legislature intended multiple punishments for this unitary conduct. *Id.*

**LEGISLATIVE INTENT**

■ {21} If there is no clear legislative intent to impose separate punishment for the same conduct, we assess "whether each [statutory] provision requires proof of an additional fact that the other does not," focusing on the elements of the offenses, not the evidence presented at trial. *State v. Santillanes,* 2001–NMSC–018, ¶ 16, 130 N.M. 464, 27 P.3d 456 (internal quotation marks and citation omitted). Where the elements are the same, one crime may subsume the other. *See Meadors,* 121 N.M. at 50, 908 P.2d at 743. In considering the elements of the offenses, we note that the "enumeration of different aggravating factors, or alternative methods of committing an offense, [do] not evince a legislative intent to authorize multiple punishments for the same act." *State v. Crain,* 1997–NMCA–101, ¶ 20, 124 N.M. 84, 946 P.2d 1095. Rather, when an offense may be charged in alternate ways, "we look only to the elements of the statutes as charged to the jury and disregard the inapplicable statutory elements." *Mora,* 2003–NMCA–072, ¶ 21, 133 N.M. 746, 69 P.3d 256. Further, where it is unclear from the verdict, we do not presume that the jury decided on

grounds that do not violate the Double Jeopardy Clause. *See State v. Foster,* 1999–NMSC–007, ¶¶ 27–28, 126 N.M. 646, 974 P.2d 140. We turn to a comparison of the elements of attempted CSP III and assault with intent to commit CSP.

{22} CSP III "consists of all criminal sexual penetration perpetrated through the use of force or coercion." § 30–9–11(E); *see also* UJI 14–941 NMRA. Because Defendant was convicted of this offense as an attempt crime, the attempt element is added, which requires, "an overt act in furtherance of and with intent to commit [CSP III] and tending but failing to effect its commission." NMSA 1978, § 30–28–1 (1963); *see also* UJI 14–2801 NMRA. Assault with intent to commit a violent felony, in this case CSP, pursuant to NMSA 1978, § 30–3–3 (1977), consists of "an attempt to commit a battery[,] any unlawful act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery[,]" or "the use of insulting language toward another impugning his honor, delicacy or reputation." NMSA 1978, § 30–3–1(A)–(C) (1963). Battery is defined as "the unlawful, intentional touching or application of force to the person of another, when done in a rude, insolent or angry manner." NMSA 1978, § 30–3–4 (1963). The jury was instructed under alternate theories of assault with intent to commit CSP. First, the jury could find Defendant guilty of assault with intent to commit CSP if Defendant tried to touch or apply force to Victim by grabbing her and trying to force her into a car or trying to force her to commit fellatio; Defendant acted in a rude, insolent, or angry manner, and Defendant intended to touch or apply force to Victim. Alternatively, Defendant could be found guilty if he grabbed at Victim and tried to force her into a car or tried to force her to commit fellatio; Defendant's conduct caused Victim to believe he was about to intrude on her bodily integrity or personal safety by touching or applying force to Victim in a rude, insolent, or angry manner; and a reasonable person in the same circumstance as Victim would have had the same belief. We refer to this latter theory as the "placed in fear" instruction. The crimes as charged both require the spe-cific intent to commit the sexual offense, CSP. Although the jury was presented with alternative theories of assault with intent to commit CSP, we do not assume that the jury decided on grounds that do not violate double jeopardy when it is not clear on which basis the jury found. *See Foster,* 1999–NMSC–007, ¶ 28, 126 N.M. 646, 974 P.2d 140. Therefore, our analysis proceeds under the theory of an attempted battery and does not focus on the alternate theory that Victim was "placed in fear" under Section 30–3–1(B).

{23} Applying the *Blockburger* test to the elements above, we conclude that the crime of attempted CSP III is subsumed within assault with intent to commit CSP. *Blockburger v. United States,* 284 U.S. 299, 303–04, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see Swafford,* 112 N.M. at 14, 810 P.2d at 1234. Proof of an overt act done with the intent of forcing CSP required by attempted CSP III is satisfied by the same proof required for the attempted restraint by force in the assault (attempted battery) charge. In fact, in order for the elements of assault with intent to commit CSP to be met, the elements of attempted CSP III must also necessarily be met. In proving the required elements that Defendant unlawfully and intentionally touched or applied force to Victim in a rude, insolent, or angry manner to cause Victim to engage in a sex act, Defendant necessarily committed attempted CSP III, which only requires that Defendant attempted to use physical force or violence to cause Victim to engage in a sex act. Thus, based on a comparison of the elements of the crimes charged, we conclude that the legislature did not intend for multiple punishments. Having established assault with intent to commit CSP subsumes attempted CSP III, "the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id.* We must next determine which conviction should stand. *See Santillanes,* 2001–NMSC–018, ¶ 9.

{24} Many cases suggest that where the elements of the crimes do not differ or the greater offense subsumes the lesser, the inquiry ends and we vacate the lesser offense. *See, e.g., Meadors,* 121 N.M. at 50, 908 P.2d at 743 (noting that unless each crime con-

tains a statutory element the other does not, one offense "subsumes" the other); *State v. Clark*, 2000–NMCA–052, ¶¶ 14–15, 129 N.M. 194, 3 P.3d 689 (determining that one statute subsumed another); *State v. Mann*, 2000–NMCA–088, ¶ 15, 129 N.M. 600, 11 P.3d 564; *State v. Pisio*, 119 N.M. 252, 261–62, 889 P.2d 860, 868–70 (Ct.App.1994).

■ {25} We also read *Santillanes* to require that the offense of attempted CSP III, as the "lesser" offense in terms of the level of punishment, be vacated. 2001–NMSC–018, ¶ 28. The Court in *Santillanes* cited, with approval, the proposition that the general rule requires the lesser offense to be vacated. *Id.* We consider attempted CSP III the lesser offense because it is a fourth degree felony, whereas the assault charge is a third degree felony. Furthermore, applying a common sense approach, it is difficult to imagine a scenario where assault with the intent to commit CSP does not necessarily include an attempt to commit that violent felony. We therefore hold that Defendant's convictions for attempted CSP III and assault with intent to commit CSP violate double jeopardy protection, and the conviction for attempted CSP III, as the lesser felony, must be vacated.

{26} Before turning to the charge of attempted kidnapping II, we briefly address a possible unintended consequence in the foregoing result. In this case, a more appropriate result may be to remand, and allow the prosecutor discretion to determine which conviction stands, rather than applying the general rule that the lesser offense be vacated. Although it is the lesser felony, attempted CSP III carries a shorter sentence, but conviction of this crime requires registration under the Sex Offender Registration and Notification Act (SORNA). *See* NMSA 1978, § 29–11A–3(E)(1)–(12) (2005). Conviction of assault with intent to commit a violent felony does not require registration under SORNA. *Id.* In cases such as this, it may be appropriate to allow prosecutorial charging discretion to drop the "greater" offense in exchange for a defendant being convicted of a "lesser offense," but having to register under SORNA. However, being bound by existing precedent, we vacate the lesser charge, in this case,

attempted CSP III. *See State v. Travarez*, 99 N.M. 309, 311, 657 P.2d 636, 638 (Ct.App. 1983) (stating that the Court of Appeals must follow applicable Supreme Court precedent). We now turn to the attempted kidnapping II conviction.

## ASSAULT WITH INTENT TO COMMIT CSP AND ATTEMPTED KIDNAPPING II

{27} We next turn to Defendant's argument that his convictions for assault with intent to commit CSP and attempted kidnapping II violate the double jeopardy protection. We begin by considering whether Defendant's conduct in committing the offenses was unitary.

## UNITARY CONDUCT

■ {28} Based on a review of the elements of the charged offenses and the facts presented at trial, we conclude that Defendant's conduct in committing attempted kidnapping II and assault with intent to commit CSP was not unitary. The facts presented at trial indicate that Defendant stopped on three occasions and asked Victim if she wanted a ride while Victim walked along a dirt path to work. Defendant stopped a fourth time off the dirt path and more aggressively invited Victim into his car for a ride. Each time Victim refused. On the fifth encounter, Defendant stopped his car in front of Victim and blocked Victim's path with his car door.

{29} If the attempted kidnapping II charge was based solely on the fifth encounter, we would agree with Defendant that the conduct was unitary because this is the same encounter that formed the basis for his conviction of assault with intent to commit CSP. *See Franco*, 2005–NMSC–013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (stating that in determining whether conduct is unitary, we consider whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses). However, Defendant stopped Victim on four prior occasions. The jury could reasonably have inferred that the factual basis for the attempted kidnapping was completed at one of these four prior encounters when Defendant offered Victim a ride to work, while harboring an intent to commit a sexual offense, as evidenced by his later demand for fellatio. *See id.; see also Jacobs*,

2000-NMSC-026, ¶ 25, 129 N.M. 448, 10 P.3d 127 (holding that evidence that the defendant offered the victim a ride home from the mall with a different intent in mind, as evidenced by later conduct, constitutes sufficient evidence of kidnapping by deception); *State v. McGuire*, 110 N.M. 304, 308–09, 795 P.2d 996, 1000–01 (1990) (determining that evidence of later sexual assault may be used by jury to infer that defendant had necessary criminal intent at time victim was first restrained); *State v. Garcia*, 100 N.M. 120, 124, 666 P.2d 1267, 1271 (Ct.App.1983) (observing that "deception" under the kidnapping statute includes acts that are intended to deceive a victim or omissions that conceal the defendant's purpose). Thus, we conclude that Defendant's conduct in attempted kidnapping II and assault with intent to commit CSP was not unitary, and therefore there was no double jeopardy violation in the convictions for both crimes. Concluding that Defendant's conduct was not unitary, our double jeopardy inquiry is complete. *State v. Barrera*, 2001-NMSC-014, ¶ 35, 130 N.M. 227, 22 P.3d 1177 ("[I]f the conduct is separate and distinct, inquiry is at an end." (internal quotation marks and citation omitted)).

## EXCLUSION OF THE PHOTOGRAPHS FROM EVIDENCE

{30} Lastly, Defendant argues that the district court erred by refusing to admit photographs of his face after it had been badly beaten by Mr. Wright, one of the State's witnesses, and another man outside of Victim's apartment complex. Defendant asserts that the photographs would have been relevant to assist the jury in determining whether the witness had, in fact, beaten and captured Victim's actual attacker. Defendant argues that the photographs would have impeached Mr. Wright's credibility to identify Defendant as the attacker because beating Defendant is evidence of Mr. Wright's motive to falsely accuse Defendant. We are not persuaded by Defendant's arguments.

{31} Even where evidence is relevant, it is properly excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Rule 11–403 NMRA. "The district court is vested with great discretion in applying Rule 11–403, and it will not be reversed absent an abuse of that discretion." *State v. Rosales*, 2004-NMSC-022, ¶ 12, 136 N.M. 25, 94 P.3d 768 (internal quotation marks, alteration, and citation omitted).

{32} In this case, the district court properly ruled that the probative value of the evidence is substantially outweighed by its prejudicial effect and tendency to confuse the issues. In light of Victim's and another witness's corroborating testimony that Victim did, in fact, identify Defendant as her attacker to Mr. Wright, the photographs of Defendant's severely beaten face to impeach the credibility of Mr. Wright's identification of Defendant as Victim's attacker is of particularly minimal relevance. *See State v. Fernandez*, 117 N.M. 673, 677, 875 P.2d 1104, 1108 (Ct.App.1994) ("In the absence of prejudice, there is no reversible error."). In addition, it is reasonable for the district court to rule that the gruesome nature of the photographs and the reasons for which Defendant sought their admission would likely unduly prejudice and confuse the jury. We imagine the jury might find from the photographs that Defendant was sufficiently or partly punished for his alleged actions, inspiring undue mercy while deliberating his guilt of the charged offenses. Further, because Mr. Wright's guilt of battering Defendant is not at issue, his justification for the beating is collateral to this proceeding. Because we see no error, we affirm Defendant's convictions on these grounds.

## CONCLUSION

{33} For the reasons discussed above, we affirm Defendant's convictions for attempted kidnapping II and assault with intent to commit a violent felony (CSP), and reverse Defendant's conviction for attempted CSP III.

{34} **IT IS SO ORDERED.**

WE CONCUR: JONATHAN B. SUTIN and RODERICK T. KENNEDY, Judges.