This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40117**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**JEREMY SANDOVAL,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Tyler Sciara, Assistant Solicitor General
Albuquerque, NM

for Appellee

The Law Office of Ryan J. Villa
Richelle Anderson
Albuquerque, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Defendant Jeremy Sandoval appeals his convictions for two counts of criminal sexual penetration of a child under thirteen years of age (CSPM) in the first degree, contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); and one count of criminal sexual contact of a minor (CSCM) in the second degree, contrary to NMSA 1978, Section 30-9-13(B)(1) (2003). On appeal, Defendant alleges that his convictions violate his right to be

free from double jeopardy and that the district court erred in admitting certain un-*Mirandized* statements at trial. For the following reasons, we affirm.

## BACKGROUND

**{2}** This case arises from allegations made by Defendant's former stepdaughter (Victim) that Defendant sexually assaulted her one night in December 2011, when she was eight years old. Specifically, Victim alleged that Defendant came home intoxicated, entered her room, and sexually assaulted her. As a result, Defendant was charged with three counts of CSPM, two by digital penetration and one by sexual intercourse, in December 2018.

**{3}** At trial, Victim testified that upon entering her room, Defendant closed and locked the door before laying on her bed. While on her bed, Defendant placed his hand under her pajama pants and underwear resulting in "skin to skin" contact with his hand and her "private area" before penetrating her vagina with his finger. She testified that Defendant then pulled down her pants and underwear, took off his belt and pants, and then Defendant penetrated her vagina with his penis. Defendant then digitally penetrated Victim's vagina again before getting up and leaving the room. The jury returned verdicts on all three counts, finding Defendant guilty of CSPM by digital penetration as to Count 1, guilty of the lesser included offense of CSCM as to Count 2, and guilty of CSPM by sexual intercourse as to Count 3.

## DISCUSSION

**{4}** On appeal, Defendant contends that his convictions violate his right to be free from double jeopardy on both double description and unit of prosecution grounds,[1] and that the district court erred in admitting his un-*Mirandized* statements about alcohol use at trial. We address these issues in turn.

### I. Double Jeopardy

**{5}** "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). "The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30-1-10 (1963). Claimed violations of the protection against double jeopardy are questions of law, which

---

1Defendant raises a double description double jeopardy challenge to his CSPM conviction on Count 1 and CSCM conviction on Count 2. Defendant separately raises a unit of prosecution double jeopardy challenge to his CSPM convictions on Count 1 and Count 3. However, Defendant does not contest, and we therefore do not address, whether his CSCM conviction on Count 2 and CSPM conviction on Count 3 violate his right to be free from double jeopardy. *See State v. Garnenez*, 2015-NMCA-022, ¶ 15, 344 P.3d 1054 (stating that we do not review arguments not raised in the brief in chief).

require de novo review. *See State v. Contreras*, 2007-NMCA-045, ¶ 18, 141 N.M. 434, 156 P.3d 725.

## A.    Double Description

**{6}**     Defendant first raises a double description challenge to his convictions for CSPM by digital penetration as described in Count 1 and CSCM as described in Count 2. In double description double jeopardy cases, the defendant is convicted under multiple statutes for a single course of conduct. *See State v. Bernal*, 2006-NMSC-050, ¶ 7, 140 N.M. 644, 146 P.3d 289. We therefore apply the two-step test articulated in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223, and first ask "whether the conduct was unitary, meaning whether the same criminal conduct is the basis for both charges." *Bernal*, 2006-NMSC-050, ¶ 9. If it is not, the protection against double jeopardy has not been violated and we proceed no further. *See id.* If it is, we proceed to ask "whether the [L]egislature intended to create separately punishable offenses." *State v. Baroz*, 2017-NMSC-030, ¶ 22, 404 P.3d 769. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment[s] in the same trial." *Swafford*, 1991-NMSC-043, ¶ 25.

**{7}**     Our inquiry for unitary conduct turns on sufficient indicia of distinctness between the acts at issue. *See id.* ¶ 26. Conduct is not unitary when space and time separates the events, or "the quality and nature of the acts or the objects and results involved are distinguishable." *State v. Contreras*, 1995-NMSC-056, ¶ 14, 120 N.M. 486, 903 P.2d 228 (omission, internal quotation marks, and citation omitted). Likewise, conduct is not unitary "when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. In conducting our analysis, we may consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* "We also consider whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Schackow*, 2006-NMCA-123, ¶ 18, 140 N.M. 506, 143 P.3d 745 (internal quotation marks and citation omitted).

**{8}**     If the jury instructions provide alternative bases for conviction of an offense, and the record is silent as to which alternative the jury relied on for the verdict, we apply the *Foster* presumption, which demands that we assume the jury relied on the alterative that may violate the protection against double jeopardy. *See Sena*, 2020-NMSC-011, ¶ 47 (citing *State v. Foster*, 1999-NMSC-007, ¶ 28, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, ¶ 17, 148 N.M. 381, 237 P.3d 683). However, our Supreme Court has held that "*Foster* does not require a further presumption that the same conduct was then relied upon by the jury in convicting a defendant of each crime—particularly when the record indicates distinct crimes were committed." *State v. Phillips*, 2024-NMSC-009, ¶ 40, 548 P.3d 51 (alterations, internal quotation marks, and citation omitted). "Thus, the *Foster*

presumption can be rebutted by evidence that each crime was completed before the other crime occurred." *Id.* (internal quotation marks and citation omitted).

**{9}** In this case, the jury instructions as to Count 1 and Count 2 were identical. On both counts, the jury was instructed on CSPM and on the lesser included offense of CSCM. The CSPM jury instructions, in relevant part, required the State to prove beyond a reasonable doubt that Defendant "caused the insertion, to any extent, of a finger into the vagina of [Victim]." *See* § 30-9-11(D)(1). Alternatively, the CSCM jury instructions required the State to prove beyond a reasonable doubt that Defendant "touched or applied force to the unclothed vulva of [Victim]." *See* § 30-9-13(B)(1).

**{10}** At trial, the State argued that the "[Victim] very distinctly remembers [Defendant] penetrating her on two occasions with his fingers and then she also remembers him penetrating her with his penis." To support its case, the State elicited testimony from Victim that Defendant laid down on her bed and put his hand on her lower stomach area before next "put[ting] his fingers . . . on [Victim's] private area." Victim described how Defendant slid his hand under her pajamas and underwear and penetrated Victim's vagina with his finger while Defendant's other hand covered Victim's nose and mouth. Victim then testified that after Defendant digitally penetrated her, he pulled down her pajamas and underwear, Victim heard Defendant take off his belt and pants, and Defendant put his penis in Victim's vagina. Victim further testified that after Defendant took his penis out of her vagina he "stuck his fingers back into [Victim's] vagina." During closing arguments, the State reiterated Victim's testimony before addressing the step-down instructions for the lesser included CSCM offense to each count. While the State did not communicate to the jury which of Defendant's acts pertained to which count at issue, on appeal the State contends Count 1 relates to Defendant's first digital penetration under Victim's pajamas while Count 2 relates to Defendant's second digital penetration after sexual intercourse.[2] Defendant argues that "the sequence of the verdicts . . . suggests a timeline where the jury connected the CSCM to the . . . CSPM that occurred *before* the act of sexual intercourse" because the State "did not address which conduct the jury should consider as to the three CSPM counts with which [Defendant] was charged." However, we cannot reconcile this argument with the longstanding directive to consider whether the evidence or the record supports a finding of distinct conduct. *See Sena*, 2020-NMSC-011, ¶¶ 54-55 (reviewing the evidence to determine whether the record indicated that distinct crimes were committed); *Phillips*, 2024-NMSC-009, ¶ 41 (differentiating convictions based on pleas and those based on jury verdicts). Regardless of the order of the jury verdicts, our inquiry remains the same—whether there is evidence that one crime was completed before the other

---

2To the extent Defendant's argument suggests possible inconsistencies in the jury instructions or jury confusion, we reiterate the district court's findings in its order denying Defendant's motion for a new trial that "[t]he errors in the Uniform Jury Instructions were clerical in nature and were corrected by the court without objection from either party" and "[t]he jurors did not indicate at any time that they were confused, and demonstrated that they were quite judicious, well-informed and attentive." *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (stating that we presume correctness in the district court's rulings and the party claiming error bears the burden of showing such error).

occurred and separated from each other by other indicia of distinctness, including intervening events. *See Sena*, 2020-NMSC-011, ¶ 56.

**{11}** Defendant contends that the conduct underlying his convictions under Count 1 and Count 2 was unitary because the actions "occurred in the same short space of time, with no physical separation between the two acts[,] and the acts were generally similar in quality . . . and involved the same object[]," Defendant's hand.[3] While we agree with Defendant that the complained of acts took place over a matter of minutes and involved the same object (Defendant's hand), the removal of Defendant's and Victim's clothing and penile penetration separates the sequence of digital penetrations and weighs in favor of distinct criminal acts.[4] First, Defendant touched Victim's vagina underneath her pajamas and underwear and digitally penetrated her vagina. Later, after Defendant had removed Victim's clothing and sexually assaulted her with his penis, Defendant then again digitally penetrated Victim's vagina. *See State v. Haskins*, 2008-NMCA-086, ¶ 19, 144 N.M. 287, 186 P.3d 916 (considering the act of the victim getting dressed and relocating to another room between touchings to be a sufficient intervening event to support separate charges for criminal sexual contact). Moreover, Defendant's commission of a separate crime, CSPM by sexual intercourse as described in Count 3, was a distinct criminal act completed between the digital penetrations. *See Sena*, 2020-NMSC-011, ¶ 46 (stating that conduct is not unitary "when one crime is completed before another is committed"). Based on the evidence presented at trial, the "jury reasonably could have inferred independent factual bases" for each of the two offenses at issue here.[5] *See State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d

---

3Defendant directs us to *State v. Mora*, where this Court concluded that a defendant's convictions for CSCM and attempted CSPM violated double jeopardy because we determined that the defendant's underlying conduct was unitary when his actions "all took place within the same short space of time, with no physical separation between the illegal acts." 2003-NMCA-072, ¶ 18, 133 N.M. 746, 69 P.3d 256. However, in that case, this Court reasoned that "the [criminal sexual] contact was the action that constituted the attempted [criminal sexual] penetration as well" when the defendant laid down on the victim and prepared to "hump" victim. *Id.* ¶¶ 18, 20. The circumstances underlying our holding in *Mora* are not present in this case where separate CSPM and CSCM convictions are based on Defendant's multiple digital penetrations of Victim, separated by sexual intercourse. Thus, we decline to review *Mora* further.

4Defendant asserts that the conduct underlying Count 1 and Count 2 was unitary because the intentional touching supporting his CSCM conviction under Count 2 was inherent in the digital penetration supporting his CSPM conviction under Count 1. *See State v. Romero*, 2013-NMCA-101, ¶ 10, 311 P.3d 1205 ("As a matter of physiology, the intentional touching or the application of force to the intimate parts of a minor is inherent in the criminal sexual penetration of a minor."). However, in *Romero*, this Court considered whether the district court erred in permitting the state to amend count one from CSPM to the lesser included CSCM offense after the victim's testimony at trial differed from the victim's statements made to law enforcement before trial, such that there was insufficient evidence to support the CSPM alleged in count one. *See id.* ¶¶ 8-10. Based on the "charged penetration unavoidably entail[ing] contact to some extent[,]" this Court concluded that the defendant was on notice and could have anticipated that evidence of CSCM would be presented at trial. *Id.* ¶ 10. The circumstances underlying our holding in *Romero* aren't present here—in this case Defendant was clearly on notice that CSCM was a lesser included offense to CSPM as each of the CSPM by digital penetration counts contained a lesser included CSCM offense. Victim's recitation of events did not change nor were the charges amended at trial. Defendant's CSPM and CSCM convictions are the product of two separate counts based on two instances of Defendant's alleged conduct. Thus, we find this argument unavailing and decline to review it further.

5To the extent Defendant contends that there are alternative theories that support a different conclusion under *Foster*, we reiterate that the presumption that the same conduct was relied upon by the jury in

1104 (internal quotation marks and citation omitted). Thus, we conclude that the *Foster* presumption has been rebutted by indicia of distinctness, including evidence that the first digital penetration was completed before the second digital penetration occurred. As such, Defendant's double jeopardy rights were not violated under the double description inquiry by the convictions for both CSPM under Count 1 and CSCM under Count 2.

## B.      Unit of Prosecution

**{12}**      Defendant next raises a unit of prosecution challenge to his convictions under Count 1 for CSPM by digital penetration and under Count 3 for CSPM by sexual intercourse. In unit of prosecution double jeopardy cases, "a defendant challenges multiple convictions under the same statute." *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747. The relevant inquiry is "whether the [L]egislature intended punishment for the entire course of conduct or for each discrete act." *Swafford*, 1991-NMSC-043, ¶ 8. In unit of prosecution cases, we again apply the two-step analysis articulated in *Swafford. See Bernal*, 2006-NMSC-050, ¶ 16. "First, we review the statutory language for guidance on the unit of prosecution." *Id.* ¶ 14. "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Id.* (internal quotation marks and citation omitted). In making this determination, we consider "whether a defendant's activity is better characterized as one unitary act, or multiple, distinct acts" based on a substantially similar analysis as applied to double description cases. *Phillips*, 2024-NMSC-009, ¶ 13 (internal quotation marks and citation omitted). In conducting this analysis, we consider the following factors as outlined in *Herron v. State*, 1991-NMSC-012, ¶ 15, 111 N.M. 357, 805 P.2d 624: "(1) temporal proximity of the acts, (2) location of the victim during each act, (3) the existence of intervening events, (4) the sequencing of the acts, (5) the defendant's intent as evidenced by [their] conduct and utterances, and (6) the number of victims." *Phillips*, 2024-NMSC-009, ¶ 12. Generally, "the number of penetrations is not dispositive of the number of violations of [the statute]; rather, the key is whether each penetration is in some sense distinct under the evidence." *State v. Pisio*, 1994-NMCA-152, ¶ 33, 119. N.M. 252, 889 P.2d 860. "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Bernal*, 2006-NMSC-050, ¶ 14.

**{13}**      Defendant was charged pursuant to Section 30-9-11(D)(1) for both Count 1 and Count 3. For the first step of our analysis, our Supreme Court has previously determined that Section 30-9-11 is ambiguous as to the unit of prosecution. *See Herron*, 1991-NMSC-012, ¶ 8, (stating that the language of Section 30-9-11 "does not indicate unambiguously whether the [L]egislature intended . . . to create a separate offense for

---

convicting Defendant of each crime fails when, as outlined in this opinion, the record indicates distinct crimes were committed. *See Phillips*, 2024-NMSC-009, ¶ 40. Here, the record indicates that Defendant committed two distinct acts of digital penetration separated by the commission of another crime, CSPM by sexual intercourse.

each penetration occurring during a continuous sexual assault"). Thus, our analysis is focused on the second step—whether Defendant's acts supporting his convictions under Count 1 and Count 3 were separated by sufficient indicia of distinctness to justify multiple punishments under the same statute.

**{14}** Defendant's convictions were based on evidence that Defendant penetrated Victim's vagina with his finger (Count 1) and penis (Count 3). Turning to the *Herron* factors, the State concedes the temporal proximity of the acts, that they occurred in a singular location, and that they involved the Victim's same orifice. However, we conclude that the existence of intervening events, sequencing of acts, and nature of Defendant's acts make the conduct sufficiently distinct.

**{15}** The record demonstrates that the disrobing of Victim and removal of Defendant's own pants intervenes in the sequencing of Defendant's acts. Additionally, the nature of Defendant's actions involved different penetrative objects and force. The first digital penetration occurred while both Victim and Defendant were clothed. The penile penetration did not begin until after Defendant had disrobed Victim and taken off his own pants. *Compare Sena*, 2020-NMSC-011, ¶¶ 52, 55-56 (concluding that the conduct underlying defendant's CSC and CSP convictions was not unitary when the crimes were separated by time and intervening events, namely, the defendant fondled the victim's breasts and digitally penetrated her *after* he repositioned her and finished penetrating her with his penis), *with State v. Sandoval*, 2025-NMCA-002, ¶ 37, 561 P.3d 1102 (concluding that the defendant's conduct was unitary when he touched the victim's breasts and vagina *while* he penetrated her with his penis). Thus, we conclude that Defendant's conduct was sufficiently distinct to justify both convictions.

## II.    Motion to Suppress

**{16}** Finally, Defendant argues the district court erred when it failed to suppress "un-*Mirandized* custodial statements" Defendant made to a detective about his alcohol use "during the time of the alleged incident." Defendant's statements corroborated testimony from the Victim that Defendant was intoxicated at the time of the abuse. Prior to trial, Defendant filed a motion to suppress the statements, claiming that he should have been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant argued that he "was seemingly in custody" at the time of questioning and "felt intimidated, lied to, and coerced" such that the subsequent statements were involuntary. Defendant makes the same assertions on appeal.

**{17}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Ketelson*, 2011-NMSC-023, ¶ 9, 150 N.M. 137, 257 P.3d 957. "We review factual determinations for substantial evidence and legal determinations de novo." *Id.* "Whether a defendant was subject to a custodial interrogation and whether a defendant's statement was voluntarily given are legal determinations that we review de novo on appeal." *State v. Olivas*, 2011-NMCA-030, ¶ 8, 149 N.M. 498, 252 P.3d 722.

**{18}**    Pursuant to *Miranda*, "law enforcement officers are obligated to administer *Miranda* warnings only when a suspect is subject to a custodial interrogation or, in other words, when [they are] (1) interrogated while (2) in custody." *Olivas*, 2011-NMCA-030, ¶ 10 (internal quotation marks and citation omitted). In determining whether a suspect is in custody for *Miranda* purposes, the ultimate inquiry is whether there has been "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 14, 142 N.M. 737, 169 P.3d 1184 (internal quotation marks and citation mitted). To make this determination we apply an objective test that considers "how a reasonable [person] in the suspect's position would have understood [their] situation," without regard for the suspect's subjective beliefs. *See id.* (internal quotation marks and citation omitted). If there has been no formal arrest prior to the questioning, "appellate courts engage in a fact-specific analysis of the totality of the circumstances under which the questioning took place" that considers "the purpose, place, and length of interrogation, the extent to which the defendant is confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant." *Olivas*, 2011-NMCA-030, ¶ 10 (alteration, internal quotation marks, and citation omitted).

**{19}**    Here, it is undisputed that Defendant was questioned without *Miranda* warnings and that Defendant had not been formally arrested at the time of the detective's interview. The sole question before us on appeal is whether Defendant was in custody at the time of questioning for purposes of receiving *Miranda* warnings. Although Defendant alleges that he "was isolated with the detective behind a closed door and in the labyrinth of [the] sheriff's office" to such a degree that "a reasonable person [would] believe that they were in custody and not free to leave," we disagree.

**{20}**    The record indicates that Defendant willingly agreed to the interview, received a ride from his wife to the sheriff's office, and was never handcuffed or placed in a holding cell. Defendant likely had to pass through a metal detector and sign a guest log book upon entry to the sheriff's office before reaching the interview room, which was "down a couple of different hallways" from the main entrance. Although the interview was conducted in a windowless interview room with the door shut and Defendant and the detective the only people present, the detective testified at the suppression hearing that he "made very clear" to Defendant that he was free to leave at any time, when he told Defendant "specifically that he could leave any time he wanted," and Defendant said he understood. The detective further testified that at no time did Defendant ever indicate he did not understand what was happening or appear confused. In fact, following the forty-five-minute interview Defendant left freely and even concedes he was never "technically" in custody.

**{21}**    Under the totality of these circumstances, we cannot conclude that the detective's questioning of Defendant restricted Defendant's freedom of movement to a degree consistent with formal arrest. Significantly, Defendant went to the interview of his own volition and indicated that he understood he was free to leave at any time, and did leave freely at the conclusion of the interview. *Compare State v. Nieto*, 2000-NMSC-031, ¶ 21, 129 N.M. 688, 12 P.3d 442 (holding the questioning of a defendant to be

routine and noncustodial where the defendant agreed to accompany police officers to the station for questioning but "was free to leave or terminate the interview" even though the interview room was small, the door shut, and "an officer was situated between [the d]efendant and the doorway"), *with Olivas*, 2011-NMCA-030, ¶ 12 (holding that a defendant was in *Miranda* custody when he was handcuffed and transported by police to the district attorney's office for questioning and was never informed he was free to leave despite the defendant's willingness to submit to questioning). Additionally, the building entry requirements Defendant complains of as amounting to restrictions on his movement appear to be no more than standard procedures in place at the sheriff's office to help ensure public safety. Based on the foregoing, a reasonable person in Defendant's position would have believed they were free to leave. Accordingly, we conclude that Defendant was not subjected to a custodial interrogation for purposes of receiving *Miranda* warnings, and that the detective's interview with Defendant was consistent with routine, noncustodial police questioning. Therefore, the district court did not err in denying Defendant's motion to suppress.

**CONCLUSION**

**{22}**	We affirm Defendant's convictions.

**{23}	IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**GERALD E. BACA, Judge**

**KATHERINE A. WRAY, Judge**