2003-NMCA-072

69 P.3d 256

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Timothy MORA, Defendant–Appellant.**

**No. 22,459.**

Court of Appeals of New Mexico.

March 20, 2003.

Certiorari Denied, No. 28,013,
May 7, 2003.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Anne Kelly, Assistant Attorney General, Albuquerque, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

*OPINION*

ALARID, Judge.

{1} Defendant Timothy Mora appeals from his convictions for aggravated residential burglary; attempted criminal sexual penetration of a minor (CSPM); criminal sexual contact of a minor (CSCM); kidnaping; and aggravated assault with a deadly weapon. He asserts that: (1) the trial court erred in refusing to allow defense counsel to ask a police witness about Victim's brother's failure to identify Defendant from a photo lineup; (2) trial counsel's failure to call Victim's brother as a witness constituted ineffective assistance of counsel; (3) Defendant was subjected to double jeopardy when he was convicted of both attempted CSPM and CSCM; and (4) that the evidence was insufficient to support his convictions.

{2} Concluding that Defendant was convicted of CSCM and attempted CSPM based on unitary conduct and that the legislature has not clearly expressed an intention for multiple punishments for unitary conduct that violates NMSA 1978, Section 30–9–11(C) (2001), and NMSA 1978, Section 30–9–13(A) (2001), we reverse and remand to the trial court with instructions to vacate Defendant's conviction and sentence for CSCM. We affirm in all other respects.

*BACKGROUND*

{3} On May 23, 1999, the twelve year-old Victim and her eight year-old brother were at home camping out in the den in separate tents. Victim's mother was asleep in her bedroom and Victim's father was sleeping on a couch in the living room. Victim testified that she was awoken at approximately 3:45 a.m. by a man in her tent. He was straddling her and pulling down her pants. He lay down on top of her with his pants down, put his fingers down her throat, and with his other hand was either holding her arms up or touching her belly. At first, the man was not doing anything, but then he starting "humping" her and continued to do so for a couple of minutes. She did not think the man ever touched her chest or between her legs. At some point the man pulled a knife out and pressed it into her "gut." Because Victim

was making noise, her brother woke up and began yelling at the man to get out of the house. The man got up, pulled up his pants, looked at her brother for a couple of seconds, and then went out through a sliding glass door.

{4} Victim's mother was awoken at approximately 4:00 a.m. by the children, who were screaming. The children told her a man had been in the house. She called 911 and her husband went outside to look for the man. Victim's mother never saw the intruder. The police arrived and found a knife that did not belong to the household in Victim's tent. It was determined that in order to gain entry, the intruder had cut and removed the screen from a window which had been left unlocked and open.

*DISCUSSION*

*Evidence Regarding Identification of Defendant*

{5} At trial, Detective Brian Link testified that he had composed a six person photo array from which Victim had identified Defendant as being the intruder. She said the man she identified looked similar to the man who had been in her tent. She also identified Defendant as the assailant at trial.

{6} On cross-examination, defense counsel elicited from the detective that the array had also been shown to Victim's brother. Defense counsel attempted to ask which individual the brother had picked from the array. The State objected on hearsay grounds. Defense counsel argued that it was not hearsay, because he was not trying to elicit the boy's statement, and that "it goes for identification." The prosecutor responded that it was hearsay as it was either a statement or a physical action "manifesting the statement." The trial court agreed and sustained the objection.

{7} Following the detective's testimony, defense counsel maintained that Victim's brother had picked an individual other than Defendant from the lineup. Defense counsel argued that the testimony was admissible under Rule 11–803(X) NMRA 2003, the "catch-all" for hearsay exceptions not otherwise specifically covered; that the testimony

was highly probative; and that it "does go to the impeaching of the [V]ictim's testimony because we have 2 separate identifications out of the same incident." The trial court maintained its ruling under Rule 11–803(X), as well as under Rule 11–403 NMRA 2003. In so ruling, the trial court specifically found that the statement did not fit under Rule 11–803(X) because there was nothing indicating that the statement was more reliable or probative on the issue of identification than the other available evidence. The trial court also found that the statement was inadmissible under Rule 11–403 because it was collateral, did not impeach Victim in any way, and had a potential for prejudice which outweighed its probative value. Victim's brother was never called to testify.

### Admissibility of Testimony

{8} On appeal, Defendant advances two arguments with regard to the admissibility of the detective's testimony. He argues (1) that the testimony sought simply was not hearsay and (2) that the testimony sought was highly probative impeachment testimony, and that by excluding it, the trial court had impermissibly invaded the province of the jury. "Admission of evidence is within the sound discretion of the trial court and the trial court's determination will not be disturbed in the absence of an abuse of that discretion." *State v. Aguayo,* 114 N.M. 124, 128, 835 P.2d 840, 844 (Ct.App.1992). "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Woodward,* 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted).

{9} Defendant first argues that the testimony sought by defense counsel, that Victim's brother picked someone other than Defendant from the photo array, is not hearsay because it was not offered in evidence to prove the truth of the matter asserted. *See* Rule 11–801(C) (defining hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, of-

fered in evidence to prove the truth of the matter asserted"). We disagree.

{10} The testimony sought by defense counsel was plainly hearsay. In this case, defense counsel was not offering the statement to demonstrate that the brother made a statement, but rather for the truth of the content of that statement—that the boy picked someone other than Defendant from the array. *See State v. Lunn,* 82 N.M. 526, 527, 484 P.2d 368, 369 (Ct.App.1971) (finding statements of sons of victims were hearsay because they were admitted, "not for the purpose of showing that the boys made statements, but for the truth of the contents of those statements"). We are not persuaded by Defendant's contention that the "truth" of the statement was that the man the brother identified was in fact the assailant. The truth of the matter asserted, and the reason defense counsel was offering the testimony, was to show that the brother *identified* someone other than Defendant. As this Court stated in *State v. Barela,* 97 N.M. 723, 726, 643 P.2d 287, 290 (Ct.App.1982), "the potential inaccuracy of the identification process itself makes it subject to its very own hearsay rule." Rule 11–801(D)(1)(c) permits admission of a statement of identification, providing the declarant testifies at the trial or hearing and is subject to cross-examination. "The proviso that the declarant be subject to cross-examination is the fundamental safeguard in admitting evidence of out-of-court identifications." *Barela,* 97 N.M. at 726, 643 P.2d at 290. The brother did not testify at trial and, accordingly, the State was given no opportunity to cross-examine him.

{11} Defendant also argues that the evidence was not hearsay because it was offered to "impeach and rebut" Victim's "weak identification" of Defendant. In support of this argument, Defendant cites one out-of-state case, *Actonet, Ltd. v. Allou Health & Beauty Care,* 219 F.3d 836, 846–48 (8th Cir.2000) (finding positive magazine review of website to be admissible non-hearsay because it directly impeached and rebutted expert's testimony that the website was unsatisfactory). This case is inapposite. In *Actonet,* the proffered evidence directly

rebutted the testimony of the defendant's expert. *Id.* at 846–47. In this case, the proffered testimony does not directly rebut Victim's identification. We agree with the trial court's finding that:

the issue then is not whether or not someone else identified a different person, but the issue is whether or not [V]ictim … identified this person or mis-identified another person.… [I]n terms of relevance, I think it['s] more collateral than it is probative and I think it['s] more likely to cause confusion or mislead the jury.

■ {12} Finally, citing the transcript where the trial court discusses the relative weight of the brother's identification and Victim's identification, Defendant argues that the trial court impermissibly substituted its judgment for that of the jury by refusing the testimony. We disagree. Defendant complains that the trial court, outside the presence of the jury, stated that there was "nothing that would indicate that the out of [court] statement is more reliable than anything else," and "the issue is whether or not the [V]ictim of this case identified this person or mis-identified another person and this does not go to that." However, these statements by the trial court were in response to Defendant's claim below that the evidence was admissible under Rule 11–803(X), which requires that the judge determine whether the "statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." *See* Rule 11–803(X)(2). The judge was appropriately analyzing the evidence under this rule, not stepping into the role of the jury.

*Effectiveness of Defendant's Trial Counsel*

■ {13} Defendant claims he received ineffective assistance of counsel due to trial counsel's failure to pursue the alternative avenue he had of presenting the evidence which he was not permitted to elicit from the detective—that is to call Victim's brother to the stand for direct testimony regarding his identification of someone other than Defendant. To prevail on a claim of ineffective assistance of counsel, Defendant "must prove that defense counsel did not exercise the skill of a reasonably competent attorney and that this incompetent representation prejudiced the defendant's case, rendering the trial court's results unreliable." *State v. Crain,* 1997–NMCA–101, ¶ 24, 124 N.M. 84, 946 P.2d 1095 (internal quotation marks and citation omitted). Defendant fails to establish a prima facie case of ineffective assistance of counsel where "a plausible, rational strategy or tactic can explain the conduct of defense counsel." *State v. Swavola,* 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct.App.1992).

{14} While arguing for admission of the detective's testimony regarding the brother's identification, defense counsel acknowledged that he had conducted a pre-trial interview of Victim's brother. Thus, the record shows that defense counsel did investigate this witness and did not simply fail to pursue an obvious defense. "Trial counsel's strategic choice made as a result of investigation as to what defense to pursue is virtually unchallengeable." *Crain,* 1997–NMCA–101, ¶ 25, 124 N.M. 84, 946 P.2d 1095 (internal quotation marks and citation omitted). Judging from defense counsel's decision to interview the brother as a potential witness and his acknowledgment of this at the very time he was moving for admission of the hearsay testimony, we presume defense counsel was aware of his option to call the brother as a witness, but made a tactical decision not to do so. Defense counsel's strategy seems to have been to try to get this evidence before the jury through the detective's testimony, rather than through the eight-year-old brother, who would have been subject to cross-examination on the point and may well have identified Defendant in court. "The decision whether to call a witness is a matter of trial tactics and strategy within the control of trial counsel." *State v. Orosco,* 113 N.M. 789, 797, 833 P.2d 1155, 1163 (Ct.App.1991), *aff'd,* 113 N.M. 780, 788, 833 P.2d 1146, 1154 (1992); *accord State v. Harrison,* 2000–NMSC–022, ¶ 63, 129 N.M. 328, 7 P.3d 478 (rejecting a claim of ineffective assistance and concluding that "[d]efense counsel made a tactical decision before trial not to hire a polygraph expert and to rely on his own cross-examination of [the State's expert]."). This Court will not second guess the trial strategy and tactics of defense counsel. *Churchman v.*

*Dorsey,* 1996–NMSC–033, ¶ 18, 122 N.M. 11, 919 P.2d 1076. We find no merit to Defendant's claim that defense counsel was ineffective.

*Double Jeopardy*

{15} At his sentencing hearing, Defendant argued that the trial court could not convict and sentence him for both attempted CSPM under Section 30–9–11(C) and for CSCM under Section 30–9–13(A) without violating his constitutional right to be free from double jeopardy. The trial court disagreed and convicted and sentenced Defendant for both offenses, running the sentences concurrently.

{16} Consistent with his position at the sentencing hearing, Defendant contends on appeal that the trial court's ruling violates his constitutional right to be free from double jeopardy because it constitutes multiple punishment for the same offense. We review double jeopardy claims *de novo. State v. Segura,* 2002–NMCA–044, ¶ 7, 132 N.M. 114, 45 P.3d 54.

{17} The constitutional prohibition against double jeopardy "protects against both successive prosecutions and multiple punishments for the same offense." *State v. Mora,* 1997–NMSC–060, ¶ 64, 124 N.M. 346, 950 P.2d 789. In this case we are faced with multiple punishments, rather than successive prosecutions. Our analysis of this issue turns on two questions: (1) was Defendant's conduct unitary; and (2) if so, did the legislature intend to impose multiple punishments for such unitary conduct. *See Swafford v. State,* 112 N.M. 3, 13, 810 P.2d 1223, 1233 (1991).

{18} With regard to the first prong of the test, we will find that conduct is not unitary when the illegal acts are "separated by sufficient indicia of distinctness." *Id.* at 13, 810 P.2d at 1233. "The court may consider as 'indicia of distinctness' the separation of time or physical distance between the illegal acts, 'the quality and nature' of the individual acts, and the objectives and results of each act." *Mora,* 1997–NMSC–060, ¶ 68, 124 N.M. 346, 950 P.2d 789 (quoting *Swafford,* 112 N.M. at 13–14, 810 P.2d at 1233–34). The State contends that the conduct

underlying the offenses in this case is not unitary, arguing that Defendant's action of lying on Victim constituted CSCM and his action of preparing to "hump" her constituted attempted CSPM. We are not persuaded by this distinction and find that Defendant's actions can only be reasonably deemed to constitute unitary conduct. The contact and attempted penetration all took place within the same short space of time, with no physical separation between the illegal acts. *Cf. State v. Cordova,* 1999–NMCA–144, ¶ 23, 128 N.M. 390, 993 P.2d 104, *cert. granted,* 128 N.M. 150, 990 P.2d 824 (1999) (finding sufficient indicia of distinctness to support separate convictions for false imprisonment and CSCM, where in between the two illegal acts, the child broke free from defendant and was pulled back by defendant where he restrained her a second time).

{19} Having determined that the conduct was unitary, we reach the second step in the *Swafford* analysis, which asks "whether the legislature intended multiple punishments for unitary conduct." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. The double jeopardy clause does not prevent the legislature from authorizing multiple punishments for the same conduct. *See State v. Nunez,* 2000–NMSC–013, ¶ 49, 129 N.M. 63, 2 P.3d 264. However, when, as in this case, the statutes at issue do not contain a clear expression of legislative intent to create separately punishable offenses, we must apply the test articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to the elements of each statute, to see whether each provision requires proof of an additional fact which the other does not. *Swafford* 112 N.M. at 14, 810 P.2d at 1234.

If that test establishes that one statute is subsumed within the other, the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both.

Conversely, if the elements of the statutes are not subsumed one within the other, then the *Blockburger* test raises only a

presumption that the statutes punish distinct offenses.

*Id.*

{20} Defendant argues that, under the specific facts of this case, the elements of CSCM are completely subsumed as a lesser included offense of attempted CSPM. We agree that under the specific facts of this case, the contact was the action that constituted the attempted penetration as well, hence our finding of unitary conduct. However, when applying the *Blockburger* analysis, we do not look to the specific facts of the case because

> for purposes of a double jeopardy inquiry, "a court would find an offense to be a lesser-included offense of another only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible *ever* to commit the greater offense without also committing the lesser offense."

*State v. Santillanes*, 2001–NMSC–018, ¶ 29, 130 N.M. 464, 27 P.3d 456 (emphasis in original) (quoting *State v. Meadors*, 121 N.M. 38, 42, 908 P.2d 731, 735 (1995)). We only examine the specific facts of the case when determining whether a defendant is entitled to a jury instruction on a lesser included offense. *See Swafford*, 112 N.M. at 12, 810 P.2d at 1232.

{21} Additionally, in this case, we are comparing the elements of a compound offense with many alternate ways of being charged (attempted criminal sexual penetration) with another multi-purpose statute written with many alternatives (criminal sexual contact). *See* § 30–9–11(C), NMSA 1978, § 30–28–1 (1963), and § 30–9–13(A). When applying the *Blockburger* test to compound offenses or offenses which may be charged in alternate ways, as we are doing in this case, we look only to the elements of the statutes as charged to the jury and disregard the inapplicable statutory elements. *See State v. LeFebre*, 2001–NMCA–009, ¶¶ 21–22, 130 N.M. 130, 19 P.3d 825.

{22} The jury instruction for attempted CSPM required the jury to find that Defendant intended to commit CSPM and began to do an act which constituted a substantial part of that crime, but that he failed to commit CSPM. The jury instruction for CSCM required a finding that Defendant "unlawfully and intentionally touched or applied force to the intimate parts" of Victim. Ways can be envisioned whereby a defendant could intend to commit CSPM and begin to do an act which constitutes a substantial part of CSPM without committing an act of CSCM. Conversely an assailant could commit an act of CSCM without attempting to commit CSPM. Thus, for purposes of double jeopardy, the offenses at issue in this case cannot be characterized as lesser-included and greater-inclusive crimes because they each contain different elements and stand independently in relation to one another. *See Swafford*, 112 N.M. at 11–12, 810 P.2d at 1231–32. Accordingly, the presumption is that the two statutes punish different offenses. *Id.* at 14, 810 P.2d at 1234.

{23} That presumption, however, may be overcome by other indicia of legislative intent. *Id.* The State argues that there is no clear legislative intent to overcome the presumption, and that accordingly both convictions should stand. However, unless an intent to punish separately can be found through an examination of legislative intent, lenity is indicated, and it is to be presumed the legislature did not intend pyramiding punishments for the same unitary conduct. *Id.* at 15, 810 P.2d at 1235.

{24} We look first to the purposes of the two statutes because if they are "directed toward protecting different social norms and achieving different policies [they] can be viewed as separate and amenable to multiple punishments." *Id.* at 14, 810 P.2d at 1234. The State acknowledges that the New Mexico Supreme Court has previously stated that the purpose of the statutes prohibiting both CSCM and CSPM is the same. *See State v. Pierce*, 110 N.M. 76, 80, 792 P.2d 408, 412 (1990) (stating that the "legislatively-protected interests under the CSPM and CSCM statutes are aimed at protecting the bodily integrity and personal safety of children"). In determining legislative intent we also look to the quantum of punishment. *Swafford*, 112 N.M. at 15, 810 P.2d at 1235.

The quantum of punishment authorized for these offenses also fails to indicate any legislative intent for multiple punishments. "Where one statutory provision incorporates many of the elements of a base statute, and extracts a greater penalty than the base statute, it may be inferred that the legislature did not intend punishment under both statutes." *Id.* Defendant's CSCM conviction was under Section 30–9–13(A), making it a third-degree felony. CSPM is a first-degree felony, *see* § 30–9–11(C); and attempted CSPM, of which Defendant was convicted, is a second-degree felony, *see* § 30–28–1 (stating attempt to commit a first-degree felony is a second-degree felony). Although the two offenses have different elements, the fact that the punishment for attempted CSPM is greater than the punishment for CSCM is also a point in favor of Defendant's position. *See State v. Fuentes* 119 N.M. 104, 109, 888 P.2d 986, 991 (Ct.App.1994) (stating that even when two offenses stand alone, with independent elements, the fact that punishment for one is greater than the other is one point in favor of determining the legislature did not intend multiple punishments).

{25} Despite the majority of the indicators demonstrating a legislative intent not to punish unitary conduct as both CSCM and attempted CSPM, the State contends that because the statutes are distinct, punishment can be had for both crimes. In so arguing, the State reiterates the fact that each crime can be committed without committing the other and also relies on the different legislative purposes behind offenses aimed at protecting adults from sexual crimes and those aimed at protecting children from those same crimes. These arguments beg the question as the distinctness of the statutes were already addressed in performing the *Blockburger* test, and we simply are not faced with any charges of CSC or CSP against an adult. Both offenses at issue in this case prohibit conduct against minors.

{26} Finally, the State urges that *State v. Trevino,* 116 N.M. 528, 865 P.2d 1172 (1993), compels a finding that Defendant's convictions do not violate double jeopardy. In

*Trevino,* our Supreme Court found that the statute prohibiting contributing to the delinquency of a minor (CDM) has a broader purpose than the statute prohibiting CSCM and that convictions for those two offenses do not violate the protections against double jeopardy. *Id.* at 532, 865 P.2d at 1176. As this case does not involve CDM, but rather two offenses which our Supreme Court has specifically stated have the same purpose, *Trevino* does not bear on this analysis.

{27} We do not believe the legislature has manifested any clear intent that a defendant could be convicted for attempted CSPM and CSCM for unitary conduct. To the contrary, the canons of construction, found in *Swafford,* demonstrate a legislative intent to disallow multiple punishment in this context. We note that, although the trial court in this case imposed concurrent sentences for Defendant's two convictions, the double jeopardy violation is not harmless, because " '[t]he second conviction, even if it results in no greater sentence, is an impermissible punishment.'" *Pierce,* 110 N.M. at 87, 792 P.2d at 419 (quoting *Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)).

## Sufficiency of the Evidence

■ {28} Finally, because Defendant would be entitled to dismissal of the charges against him if we were to find in his favor regarding the sufficiency of the evidence, we summarily address that issue. No claim is made that the evidence does not support proof as to any specific required element of the offenses charged. Rather, pursuant to *State v. Franklin,* 78 N.M. 127, 428 P.2d 982 (1967) and *State v. Boyer,* 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), Defendant asserts a general absence of sufficient evidence to support the convictions. Having reviewed the evidence in the light most favorable to the verdict, we conclude that there was sufficient evidence to support Defendant's convictions beyond a reasonable doubt. *See State v. Vernon,* 116 N.M. 737, 738, 867 P.2d 407, 408 (1993); *State v. Garcia,* 114 N.M. 269, 274, 837 P.2d 862, 867 (1992).

## CONCLUSION

{29} We hold that Defendant's convictions for both CSCM and attempted CSPM based on unitary conduct violate the constitutional prohibition against double jeopardy. We reverse and remand to the trial court with instructions to vacate Defendant's conviction and sentence for CSCM. We affirm in all other respects.

{30} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.