# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **NO. 27,867**

**SCOTT D. JOHNSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Don Maddox, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Joel Jacobsen, Assistant Attorney General
Albuquerque, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Eleanor Brogan, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**WECHSLER, Judge.**

Defendant Scott Johnson appeals from his conviction of trafficking a controlled substance as an accessory. On appeal, Defendant argues that (1) the district court erred in admitting a forensic crime laboratory report created by the New Mexico

Department of Public Safety (DPS) into evidence as an exception to the hearsay rule, (2) his constitutional right to confrontation was violated when one DPS laboratory analyst was permitted to offer testimony based on the DPS laboratory report in question in place of the analyst who actually created the report, (3) the State failed to introduce sufficient evidence to support his conviction, and (4) his attorney provided ineffective assistance of counsel. We conclude that the district court committed no reversible error and that sufficient evidence was presented to support Defendant's conviction. We affirm.

**BACKGROUND**

Defendant was charged with trafficking a controlled substance following an undercover investigation performed by Agents John Martinez and Chris Kemp, two law enforcement officials employed by the Lea County Drug Task Force. Defendant was ultimately brought to trial before a jury at which four witnesses offered testimony: (1) Agent Martinez, (2) Agent Kemp, (3) Defendant, and (4) Eric Young, a forensic scientist employed by the DPS.

According to Agent Martinez's testimony, Agent Martinez came into contact with Defendant while on undercover patrol in an area known for its frequent drug activity. Upon initiating contact with Defendant, Agent Martinez expressed his desire

2

to purchase crack cocaine. In response, Defendant produced three rocks that appeared to be crack cocaine, which Agent Martinez offered to buy from Defendant for $40. Agent Martinez informed Defendant that he needed to go to his vehicle to get the money. Defendant told him to do so, and Agent Martinez returned with a $100 bill. Agents Martinez and Kemp drove to a convenience store for change. When they returned, Defendant was with others, and he and another man were smoking crack cocaine. Defendant informed Agents Martinez and Kemp that he would obtain crack cocaine for them at another location if they gave him cash. Agent Martinez did not agree, and, ultimately, Defendant suggested that all three men go together to obtain the crack cocaine. Agents Martinez and Kemp agreed, and all three men got into the agents' truck and drove to another area at Defendant's direction. When they arrived at an alleyway, Defendant left the truck and returned with two other men. Defendant and one of the men who referred to himself as "Shorty" got into the backseat of the agents' truck, and Shorty and Agent Martinez negotiated a price for the crack cocaine in Shorty's possession. When the transaction was completed, Shorty exited the truck, and the agents drove Defendant back to his home. On cross-examination, Agent Martinez testified that he did not hear any conversation between Shorty and Defendant, that Defendant did not participate in the negotiations between Agent

Martinez and Shorty, and that Defendant never handled any of the money or crack cocaine involved in the transaction.

Agent Kemp testified that Defendant directed Agent Martinez and him to a location to obtain crack cocaine. Defendant left to meet someone to get the crack cocaine to bring back to them. Defendant returned with two men. One of the men told Agent Martinez that he had the drugs. The other man and Defendant entered the agents' truck. Drugs were handed to Agent Martinez, who put them in the ashtray.

According to Defendant's testimony, the crack cocaine he had when he first met the agents was not for sale. However, Defendant admitted that he offered to "go get" crack cocaine for the agents if they gave him money. Defendant testified that he decided to get into the agents' truck so that he could purchase more crack cocaine for himself. Defendant further testified that after the truck was parked in the new area, he exited the vehicle to look for crack cocaine to purchase for himself; was unable to locate his regular dealer; returned to the agents' truck; and was, unbeknownst to him, followed by Shorty. Finally, Defendant testified that he did not know Shorty, he was not involved in the negotiations between Shorty and Agent Martinez, he did not encourage or help Shorty to sell crack cocaine to the agents, and he did not profit from the ultimate sale.

The State also called Eric Young of the DPS to testify. Defendant moved in limine to restrict Mr. Young's testimony, and the district court heard testimony of Mr. Young out of the presence of the jury in connection with the motion. Defendant's objections to the testimony included hearsay and the violation of Defendant's right to confront the analyst of the evidence in violation of the United States and New Mexico constitutions. The district court denied the motion, and Mr. Young proceeded to testify before the jury. Mr. Young offered testimony concerning the chemical testing of the crack cocaine sold to the agents. He testified that he was a forensic scientist employed at the Southern Forensic Laboratory, that another employee, Danielle Elenbaas, performed the tests on the substance at issue, and that she ultimately determined it to be crack cocaine. On cross-examination, Mr. Young admitted that he did not analyze the substance at issue or observe the other forensic chemist's performance of the tests. Finally, Mr. Young admitted that he simply reviewed the other forensic chemist's report before testifying. Following Mr. Young's testimony, the DPS laboratory report was admitted into evidence.

The State rested its case. Defendant's counsel then moved for a dismissal of the charge against Defendant, arguing that "there is [no] criminal liability or criminal sanctions provided for a person unlawfully and intentionally assisting another person

5

in the transfer of a controlled substance." Defendant's counsel also moved for a directed verdict, arguing that there was insufficient evidence for the jury to conclude that Defendant caused, encouraged, or helped Shorty sell the crack cocaine to Agent Martinez. The district court denied both motions, and the jury ultimately convicted Defendant. This appeal followed.

**ADMISSIBILITY OF LABORATORY REPORT**

Defendant argues that the district court erred in admitting into evidence the DPS laboratory report indicating that the substance sold to Agent Martinez was crack cocaine because it constituted hearsay evidence not covered by any exception to the hearsay rule. The State responds by arguing that the report was not introduced into evidence. In his reply brief, Defendant states that the report "was not tagged as a physical exhibit" but "was admitted into evidence in the form of Mr. Young's testimony."

We need not directly address Defendant's argument that the report was before the jury in the form of Mr. Young's testimony. Even if we assume that Mr. Young's testimony was tantamount to the receipt in evidence of the report, we conclude that the district court did not err in admitting hearsay evidence.

"We review the admission of evidence under an exception to the hearsay rule

6

with deference to the trial court's discretion; we review to determine whether there has been an abuse of discretion." *State v. McClaugherty*, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486, *aff'd*, 2008-NMSC-044, 144 N.M. 483, 188 P.3d 1234. We will not conclude that the district court "abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Mora*, 2003-NMCA-072, ¶ 8, 133 N.M. 746, 69 P.3d 256 (internal quotation marks and citation omitted).

Although the district court allowed Mr. Young's testimony without reference to a particular exception to the hearsay rule, Defendant and the State based their arguments, in part, on the business records exception. The business records exception to the hearsay rule provides that the following documents are admissible:

> A memorandum, report, record or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness[.]

*Id.* The rule further provides that the exception is not to be applied if the "source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* Defendant primarily argues on appeal that the public records

exception to the hearsay rule does not apply. The public records exception to the hearsay rule permits the admission of "[r]ecords, reports, statements or data compilations, in any form, of public offices or agencies" that set forth "the activities of the office or agency" or "matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel." Rule 11-803(H)(1)-(2).

In *State v. Christian*, 119 N.M. 776, 778, 895 P.2d 676, 678 (Ct. App. 1995), *limited on other grounds by State v. Ruiz*, 120 N.M. 534, 537, 903 P.2d 845, 848 (Ct. App. 1995), this Court considered the admissibility of a blood alcohol report created by an employee of the Scientific Laboratory Division of the New Mexico Department of Health (SLD) under both the business records and public records exceptions to the hearsay rule. We held that the report was properly admitted into evidence under both exceptions. *Id.* at 780-82, 895 P.2d at 680-82.

Defendant essentially offers no argument against the admission of Eric Young's testimony under the plain language of the business record exception, Rule 11-803(F), and our review of the trial transcript revealed that, as in *Christian*, a sufficient foundation for that exception was laid and that there was no indication elicited at trial

8

that called into question the trustworthiness of the DPS laboratory report on which Mr. Young based his testimony. *See Christian*, 119 N.M. at 780-81, 895 P.2d at 680-81. At bottom, Defendant argues that the district court's admission of the DPS laboratory report into evidence was reversible error because it "allow[ed] the State to prove its case through a report generated by a police agency during the investigation of a crime under the guise of an ordinary business record." However, as we stated in *State v. Delgado*, 2009-NMCA-___, ¶ 11, ___ N.M. ___, ___ P.3d ___ (No. 27,192, May 14, 2009), even if we were to accept Defendant's assertion that the Southern Forensic Laboratory of the DPS is a "police agency," *Christian* expressly dictates that "even documents prepared by the state police crime laboratory can satisfy the public records exception where an adequate foundation for reliability is laid." *Christian*, 119 N.M. at 781, 895 P.2d at 681; *see Delgado*, 2009-NMCA-___, ¶ 8. As we have stated above, Defendant offers no compelling argument alleging that an improper foundation for the DPS laboratory report was laid or that the report was in any way unreliable. We therefore conclude that the district court did not abuse its discretion in admitting the DPS laboratory report into evidence.

**RIGHT TO CONFRONTATION**

Defendant argues that, because Defendant was not permitted to cross-examine

the DPS laboratory analyst who created the laboratory report at issue, his Sixth Amendment right to confrontation under *Crawford v. Washington*, 541 U.S. 36 (2004), was violated. We review this issue de novo. *State v. Dedman*, 2004-NMSC-037, ¶ 23, 136 N.M. 561, 102 P.3d 628 ("Questions of admissibility under the Confrontation Clause are questions of law.").

In *Dedman*, our Supreme Court held that a breath alcohol report of the SLD was not testimonial evidence for purposes of the Confrontation Clause under *Crawford* for a variety of reasons, including that SLD personnel are not law enforcement. *Dedman*, 2004-NMSC-037, ¶ 30. Defendant contends that *Dedman* does not apply in this case because, unlike *Dedman*, the laboratory report in this case was prepared by a forensic chemist employed by DPS, "specifically to help law enforcement agencies investigate and prosecute cases." We addressed this issue in *Delgado*. In *Delgado*, we declined to credit this distinction and held, instead, that the testimony of a DPS forensic chemist concerning the report of an analysis for controlled substances prepared by another DPS forensic chemist was not testimonial evidence under *Crawford*. *Delgado*, 2009-NMCA-___, ¶ 18. We further held that the defendant's inability to cross-examine the forensic chemist who prepared the report did not violate the defendant's confrontation rights under *Ohio v. Roberts*, 448 U.S. 56 (1980),

*abrogated on other grounds by Crawford*, 541 U.S. 36, because the hearsay testimony was admitted under firmly-rooted exceptions to the hearsay rule—the business records and public records exceptions. *Delgado*, 2009-NMCA-___, ¶ 18. On the basis of our analysis in *Delgado*, Defendant has not shown a confrontation clause violation in this case.

**SUFFICIENCY OF THE EVIDENCE**

Defendant further argues that the evidence presented at his trial was insufficient to prove beyond a reasonable doubt that he was an accessory to the crime of trafficking crack cocaine. In addressing Defendant's argument, "[w]e must view the evidence in the light most favorable to the State, resolving all conflicts and indulging all permissible inferences in favor of the verdict[s,]" and we must conduct our review "to determine whether *any* rational jury could have found the essential facts to establish each element of the crime[s] beyond a reasonable doubt." *State v. Reed*, 2005-NMSC-031, ¶ 14, 138 N.M. 365, 120 P.3d 447.

The district court instructed the jury that to convict Defendant of trafficking of a controlled substance by distribution, the State was required to prove beyond a reasonable doubt that, on July 21, 2005, Defendant transferred crack cocaine to another, and Defendant knew it was crack cocaine. The court further instructed the

11

jury that it may find Defendant guilty,

> even though he himself did not do the acts constituting the crime, if the State proves to your satisfaction beyond a reasonable doubt that:
>
> > 1. [D]efendant intended that the crime be committed;
> >
> > 2. The crime was committed;
> >
> > 3. [D]efendant helped, encouraged or caused the crime to be committed.

The testimony of Agent Martinez indicates that he attempted to purchase crack cocaine from Defendant. When Defendant could not provide the crack cocaine they originally discussed, Defendant offered to obtain other crack cocaine. He went in the agents' truck to another location. Defendant left the truck and returned with another man, Shorty, with whom Agent Martinez negotiated a purchase. Defendant testified that he was not involved in the sale of crack cocaine by Shorty and was present because he wanted to purchase crack cocaine for himself. However, Defendant admitted that he offered to obtain crack cocaine for the agents if they provided him money. According to Agent Martinez's testimony, when the agents would not give Defendant money, Defendant suggested that he go with the agents to obtain crack cocaine. The testimony of Agent Martinez about Defendant's actions, when viewed in the light most favorable to the verdict, was sufficient evidence upon which the jury

could have reasonably concluded beyond a reasonable doubt that Defendant helped, encouraged, or caused the sale by Shorty to be made. *See State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993) (discussing that in a substantial evidence review, the court "may not reweigh the evidence nor substitute [its] judgment for that of the jury").

**INEFFECTIVE ASSISTANCE OF COUNSEL**

Defendant lastly argues that his trial counsel did not provide him effective assistance because he failed to file a motion to suppress or a motion to dismiss or inquire about whether Shorty was a confidential informant. To establish a prima facie case of ineffective assistance of counsel, Defendant has the burden to prove that (1) his attorney's performance fell below that of a reasonably competent attorney, and (2) Defendant was prejudiced by his attorney's deficient performance. *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729. In determining whether Defendant has established a prima facie case of ineffective assistance of counsel, we do not second guess the trial strategy and tactics of counsel. *State v. Gonzales*, 113 N.M. 221, 230, 824 P.2d 1023, 1032 (1992).

Although Defendant argues that "the facts in the record demonstrate that a reasonably competent attorney would have filed a motion to suppress the [crack]

13

cocaine evidence or motion to dismiss the charges based on the criminal complaint," he does not explain in any way the facts that support his argument. Defendant had the burden to show how the facts support his argument. *See State v. Stenz*, 109 N.M. 536, 537, 787 P.2d 455, 456 (Ct. App. 1990). Because Defendant does not direct us to the facts supporting his argument, he did not meet his burden. He did not raise a prima facie case that his attorney's performance fell below that of a reasonably competent attorney.

Defendant also does not explain the basis for his argument that his attorney was ineffective by failing to inquire about whether Shorty was a confidential informant. As we have stated, we will not second guess an attorney's trial strategy or tactics. Defendant has also not shown in this regard that his attorney did not meet the standard of a reasonably competent attorney.

Moreover, as we have discussed, Defendant must not only prove that his attorney did not meet the standard of a reasonably competent attorney, he must also show prejudice. *Hester*, 1999-NMSC-020, ¶ 9. Even if we were to assume that Defendant met his first obligation, he has not addressed the manner in which the deficiencies in his attorney's performance that he has alleged have prejudiced him.

Defendant has not made a prima facie case of ineffective assistance of counsel.

14

As the State argues, the preferred procedure to raise the issue is through a post-conviction habeas corpus proceeding. *State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31.

**CONCLUSION**

We affirm.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**CELIA FOY CASTILLO, Judge**