This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-42197**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**FERNANDO I. RAMIREZ,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jennifer Wernersbach, District Court Judge**

Raúl Torrez, Attorney General
Taylor V. Bui, Assistant Solicitor General
Santa Fe, NM

for Appellee

Bennet J. Baur, Chief Public Defender
Anne Amicarella, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**MEDINA, Chief Judge.**

**{1}**    This matter was submitted to the Court on Defendant's brief in chief pursuant to the Administrative Order for Appeals in Criminal Cases from the Second, Eleventh, and Twelfth Judicial District Courts in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Following consideration of the brief in chief, the Court assigned this matter to Track 2 for additional briefing. Now having considered the brief in chief, answer brief and reply, we affirm in part and reverse in part, and remand to the district court for further proceedings.

**{2}** Defendant appeals his convictions, after a jury trial, for Criminal Sexual Penetration of a Minor (Child Under 13) (CSPM), and Criminal Sexual Contact of a Minor (Child Under 13) (CSCM). [BIC 2-3] Defendant argues that testimony of a Sexual Assault Nurse Examiner (SANE) and a case agent improperly bolstered Victim's testimony, that the district court improperly denied his motion for a new trial, that there was cumulative error, and that the convictions violate protections against double jeopardy. [BIC 15, 30, 34, 35; RB 1, 5]

## I.  Testimony of SANE

**{3}** Defendant first contends the district court committed error in admitting expert testimony of Maryann Chavez, a SANE, related to the identity of the perpetrator and the cause of Victim's injuries. [BIC 18-29; RB 1-4] *See* Rule 11-103(E) NMRA; *State v. Contreras*, 1995-NMSC-056, ¶ 23, 120 N.M. 486, 903 P.2d 228 (providing that appellate courts may review unpreserved evidentiary issue for plain error). We disagree.

**{4}** Because Defendant did not timely object to the testimony at issue, we review this issue for plain error. [BIC 17; AB 3; RB 1] *See State v. Gwynne*, 2018-NMCA-033, ¶ 26, 417 P.3d 1157. Plain error is (1) error, (2) that is plain, and (3) that affects substantial rights. *Id.* ¶ 27. To find plain error, "[w]e must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). "Plain error is an exception to the general rule that parties must raise timely objection to improprieties at trial, and therefore it is to be used sparingly." *State v. Dylan J.*, 2009-NMCA-027, ¶ 15, 145 N.M. 719, 204 P.3d 44 (internal quotation marks and citation omitted). To determine if there has been plain error, we review "the alleged errors in the context of the testimony as a whole." *Gwynne*, 2018-NMCA-033, ¶ 27.

**{5}** Defendant contends the SANE's testimony effectively identified Defendant, improperly vouched for Victim's credibility, and invaded the province of the jury as to the ultimate issue in the case. [BIC 18-29] Relevant to these claims, the SANE did not in fact name Defendant as the alleged perpetrator during her trial testimony, but referred instead to the perpetrator only as "he." [11-15-22 CD 3:30:00-30] At trial, the SANE briefly used her notes to recount several of Victim's statements to her, including that the alleged perpetrator was the "he" who occasionally stays in a particular bedroom in Victim's father's house, and that "he" pulled Victim into "his room," where "he" assaulted her. [11-15-22 CD 3:30:30-31:17; BIC 11] The SANE testified she used this information to guide her physical examination of Victim, which included performing a colposcopy. [11-15-22 CD 3:44:54-45:07; BIC 12] The SANE described her findings from the physical examination, identifying one series of injuries in particular that was not a normal exam finding and was consistent with penetration. [11-15-22 CD 3:45:28-32; BIC 12] The SANE identified possible causes other than penetration, but Victim's medical history did not support these other causes. [11-15-22 CD 3:46:00-18, 3:46:35-50; BIC 12] Asked by the State for a diagnosis, the SANE identified "child sexual abuse or sexual assault." [11-15-22 CD 4:23:59-4:24:02; BIC 12] On cross-examination, the SANE agreed with defense counsel that the SANE's role was "not . . . to . . . investigate

. . . what happened or if it happened a different way" but instead to see if she had enough information to make a diagnosis based on the child's history and the physical exam. [11-15-22 CD 4:39:45-4:40:12; BIC 12-13]

**{6}** Defendant contends the SANE's testimony improperly bolstered Victim's credibility and had the effect of indirectly identifying Defendant. [BIC 18-29; RB 1-4] In addition, Defendant argues the SANE's diagnosis of sexual assault or sexual abuse improperly invaded the province of the jury as to the ultimate issue of the case and was tantamount to testifying she believed Victim, thus again vouching for or bolstering Victim's credibility. [BIC 25-26] Defendant claims these errors amounted to plain error because credibility was crucial to the case and the perpetrator's identity was at issue. [BIC 29, 33]

**{7}** To support his arguments, Defendant cites *State v. Alberico*, 1993-NMSC-047, ¶¶ 84-89, 116 N.M. 156, 861 P.2d 192 and *State v. Lucero*, 1993-NMSC-064, ¶¶ 15-19, 22, 116 N.M. 450, 863 P.2d 1071. [BIC 19-23] In *Alberico*, our Supreme Court held that a psychologist expert may not directly comment on a sexual assault victim's credibility, testify as to the identity of the perpetrator, or opine that the victim's post-traumatic stress disorder (PTSD) was caused by sexual assault, because this would "vouch[] too much for the credibility of the victim and encroach[] too far upon the province of the jury." *Id.* ¶¶ 84, 88, 91. In *Lucero*, our Supreme Court expounded on *Alberico* to conclude it constituted plain error when a psychologist directly and repeatedly commented on the credibility of the victim, named the perpetrator, and opined that victim's PTSD was caused by sexual assault. *Lucero*, 1993-NMSC-064, ¶¶ 15-17.

**{8}** Distinguishing *Alberico* and *Lucero*, this Court has held that a medical expert may properly testify about a victim's statements made as part of a physical examination, even if those statements relate that an assault occurred or name the perpetrator, so long as the expert does not "comment on the victim's credibility or testify as to her belief that the defendant was the perpetrator." *State v. Salazar*, 2006-NMCA-066, ¶ 12, 139 N.M. 603, 136 P.3d 1013; *see also State v. Paiz*, 2006-NMCA-144, ¶¶ 36, 39, 140 N.M. 815, 149 P.3d 579 (finding no error in the district court's admission of medical doctor's testimony of victims' histories about the sexual contact at issue because the histories were used to guide a physical examination, the expert did not comment on the victims' credibility, and the expert did not identify the defendant as the perpetrator).

**{9}** We are not convinced that the admission of the SANE's testimony was error. The SANE testimony at issue in this case is more like the medical testimony in *Salazar* and *Paiz* than the psychologists' testimony in *Alberico* and *Lucero*. *See Paiz*, 2006-NMCA-144, ¶ 38 (stating that *Lucero* did not limit medical doctor's testimony as to victims' statements about sexual assault made during physical examination because *Lucero* applies to statements made to PTSD testimony and testimony of psychologists). The SANE relayed Victim's statements to her before the examination, testified that she used those statements to guide her physical examination, did not directly comment on the Victim's credibility, did not identify the perpetrator by name, and did not testify she believed that Defendant was the perpetrator. *See Salazar*, 2006-NMCA-066, ¶ 12.

Furthermore, even if it were error, we are not convinced admission of this testimony constituted plain error because there was ample other evidence that Defendant was the perpetrator. *See State v. Luna*, 2018-NMCA-025, ¶ 41, 458 P.3d 457 ("Where there exists ample evidence outside of the complained-of expert testimony to support the jury's finding of guilt, it is not plain error to admit such testimony." (alterations, internal quotation marks, and citation omitted)). At trial, Victim herself testified that Defendant assaulted her. [BIC 4-5] In addition, Victim, her stepmother, and her sister all testified that Defendant and Victim's father were the only two adult males in the home, and that Victim's father was with Victim's stepmother during the timeline of the assault, such that Defendant was the only one who could have assaulted Victim. [BIC 4, 6, 7]

**{10}** Likewise, admission of the SANE's diagnosis of "child sexual abuse or sexual assault" was not clearly erroneous. First, though *Alberico* cautions against an expert "diagnosing" a victim's PTSD as being caused by sexual assault, Victim's testimony about the assault in this case was corroborated by documented physical injuries. Second, it was clear from closing argument that Defendant's trial strategy was not to focus on whether Victim was assaulted—indeed, in closing argument Defendant conceded that "whatever happened to [Victim], clearly it was traumatic" and "obviously something happened"—but instead to focus on the identity of the assailant. [11-16-2022 CD 11:42:09-36, 11:45:03-48:00, 12:13:25-29]

**{11}** Accordingly, Defendant does not persuade us that the SANE's testimony, viewed against the evidence as a whole, "constituted an injustice that creates grave doubts concerning the validity of the verdict." *See Gwynne*, 2018-NMCA-033, ¶ 38 (internal quotation marks and citation omitted); *see also Dylan J.*, 2009-NMCA-027, ¶ 20 (declining to find plain error where a mental health expert repeated three statements by a child victim identifying the defendant, and stating that "[w]e think that the mental health expert's prejudicial testimony . . . needs to be more extensive, as in *Lucero*, to give rise to plain error"). We therefore conclude that admission of the SANE's testimony was not plain error.

## II.     Denial of Motion for New Trial

**{12}** Defendant argues that the district court improperly denied his motion for a new trial. [BIC 30-31; 2 RP 254; 3-26-24 CD 11:09:30-50] Here, too, Defendant relies on the proposition that the SANE's testimony improperly vouched for and bolstered Victim's testimony and identified Defendant. [BIC 30; RP 256-57] Because we have concluded that admission of the SANE's testimony was not plain error, we also conclude that the district court did not err in denying Defendant's motion for new trial on these grounds.

## III.     Testimony of Case Agent

**{13}** Defendant next argues the district court erred in admitting testimony by the case agent that he reviewed the SANE report and watched the forensic interviews—none of which were placed in evidence—before deciding to arrest Defendant. [BIC 9-10, 33; RB 4-5] Defendant contends that the case agent's testimony effectively informed the jury

that he had more information than they did, thus improperly vouching for Victim. [BIC 33] Because Defendant did not preserve this issue with a timely and specific objection [11-15-22 CD 11:28:17-57:58; BIC 16], we review it for plain error. *Gwynne*, 2018-NMCA-033, ¶ 26.

**{14}** Relevant to this argument, we note the case agent testified about his experience as a police officer, including six years in the Crimes Against Children Unit, where he had investigated 500 to 1,000 cases of physical and sexual abuse of children. [11-15-22 CD 11:28:17-32:41; BIC 9] He described the investigative process for these cases, which included referrals for forensic interviews, and in the case of sexual abuse occurring within the past seventy-two hours for SANE exams. [11-15-22 CD 11:32:48-39:36; BIC 9] He testified that he set up a SANE exam for Victim. [11-15-22 CD 11:42:45-55; BIC 10] He testified he received the exam report and, "with the information [he] learned from that exam" he set up an emergency forensic interview for Victim and her sister. [11-15-22 CD 11:44:04-20; BIC 10] He testified that after watching the forensic interviews, he applied for warrants, including an arrest warrant for Defendant, which was granted. [11-15-22 CD 11:54:50-55:28; BIC 10] Defendant notes that neither the SANE report nor the forensic interviews were admitted into evidence. [BIC 33]

**{15}** Defendant contends the case agent, whose significant experience was established by the State, effectively informed the jury he had more information than the jury did, and thus bolstered Victim's testimony identifying Defendant as the perpetrator, and that admission of this testimony was plain error. [BIC 33-34] In support, Defendant cites two New Mexico decisions addressing improper statements by prosecutors—not witnesses—during closing argument. [BIC 31-32] In *State v. Baca*, 1995-NMSC-045, ¶ 36-39, 120 N.M. 383, 902 P.2d 65, our Supreme Court reversed a conviction for cumulative error based on multiple errors, which included the prosecutor's comments in closing argument that (1) he had a higher ethical duty than defense counsel, thus implying he would not have pursued the case unless the defendant was guilty; and (2) a magistrate judge had already found probable cause that the defendant committed the crime. In *State v. Pennington*, 1993-NMCA-037, ¶¶ 26-28, 115 N.M. 372, 851 P.2d 494, the defendant challenged a conviction where the prosecutor in closing argument referred to her own ethical obligation not to present a witness who was lying and asserted to the jury that the witness was not lying. Because the defendant had not made a timely and specific objection to the prosecutors' statement, this Court reviewed it for fundamental error, and affirmed the conviction. *Id.* ¶¶ 31-34. Neither of these cases address witness testimony that is subject to cross-examination, and neither case reversed a conviction based on plain error.

**{16}** Further, having reviewed the entirety of the case agent's testimony, we do not agree with Defendant that the case agent's testimony improperly vouched for Victim's credibility in any way, and are likewise unpersuaded that its admission was an injustice creating grave doubts about the validity of the verdict. *See Gwynne*, 2018-NMCA-033, ¶ 27. Accordingly, we conclude Defendant did not meet his burden to show admission of the case agent's testimony was plain error requiring reversal.

## IV. Cumulative Error

**{17}** Defendant contends that the cumulative effect of the errors asserted above impacted Defendant's constitutional right to a fair trial. [BIC 34-35] Based on our analysis of the preceding arguments, we conclude that Defendant did not establish a degree of error such that reversal is appropriate. *See Gwynne*, 2018-NMCA-033, ¶ 41 (stating that improper testimony of a witness and an officer did not amount to cumulative error because, "[e]ven given the purported imperfections in [the d]efendant's trial . . . we conclude that the record as a whole demonstrates that [the d]efendant received a fair trial); *State v. Aragon*, 1999-NMCA-060, ¶ 19, 127 N.M. 393, 981 P.2d 1211 ("[A]s we find no error in the actions and decisions of the [district] court, there is no cumulative error.").

## V. Double Jeopardy

**{18}** Finally, Defendant argues that his convictions for CSPM and CSCM violate the state and federal constitutional prohibitions against double jeopardy. [BIC 35-47; RB 5-9] We agree.

**{19}** We apply a de novo standard of review to a double jeopardy challenge. *State v. Andazola*, 2003-NMCA-146, ¶ 14, 134 N.M. 710, 82 P.3d 77. Neither side argues that our state double jeopardy clause provides different protections than its federal counterpart [BIC 35-47; AB 14-22; RB 5-9], and we analyze those clauses identically. *See Herron v. State*, 1991-NMSC-012, ¶ 5 n.2, 111 N.M. 357, 805 P.2d 624 ("Our courts long have held that the state and federal constitutional prohibitions against double jeopardy are of such similarity that they should be construed and interpreted in the same fashion.").

**{20}** Defendant's challenge requires a double description analysis. *See State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (stating that a double description double jeopardy case is one in which the "defendant is charged with violations of multiple statutes for the same conduct"). A double description analysis has two steps: we must analyze (1) whether the conduct is unitary, and if so, (2) whether the Legislature intended to punish the offenses separately. *See Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *State v. Silvas*, 2015-NMSC-006, ¶ 9, 343 P.3d 616 (internal quotation marks and citation omitted).

**{21}** "When determining whether [a d]efendant's conduct was unitary, we consider whether [the d]efendant's acts are separated by sufficient indicia of distinctness." *DeGraff*, 2006-NMSC-011, ¶ 27 (internal quotation marks and citation omitted). We consider six factors to decide whether specific criminal acts are sufficiently distinct so as not to be unitary. *See Herron*, 1991-NMSC-012, ¶ 15. Those factors are (1) temporal proximity of the acts, (2) location of the victim or victims during each act, (3) existence of any intervening events, (4) sequencing of acts, (5) the defendant's intent as

evidenced by their conduct and utterances, and (6) the number of victims. *Id.* Though *Herron* was a unit of prosecution double jeopardy case, we also apply the *Herron* factors to determine whether conduct was unitary in a double description case. *See State v. Phillips*, 2024-NMSC-009, ¶¶ 13, 38, 548 P.3d 51 (stating that the unitary conduct analyses in double description cases and in unit of prosecution cases are substantially similar and applying *Herron* factors in a double description case). These factors are guidelines and no factor is individually dispositive. *See id.* ¶ 13 ("[N]o *Herron* factor is dispositive, but instead . . . all factors should be considered together in light of the facts and circumstances of each case."). Other considerations include the elements of the charged offenses and whether the force used to commit one crime is the same as the force used to commit another crime. *See State v. Sandoval*, 2025-NMCA-002, ¶ 34, 561 P.3d 1102. "Irrespective of which of the *Herron* factors or other considerations is deemed controlling in a given case, our case law makes clear that 'if it reasonably can be said that the conduct is unitary, then we must conclude that the conduct was unitary.'" *Id.* (quoting *Phillips*, 2024-NMSC-009, ¶ 35).

**{22}** Defendant penetrated Victim's anus and touched her vulva at the same time, without any intervening act, and in the same location of the house: the bed in the guest bedroom. [BIC 4, 41; AB 16-17]. The State does not contend that Defendant moved Victim or changed her position. [BIC 43; AB 16-18] Defendant did not speak during the acts [BIC 27], and his intent may fairly be construed as a single intent to sexually assault Victim. *See Herron*, 1991-NMSC-012, ¶ 13 (discussing how multiple penetrations may "be inspired by a single criminal intent bent on a single assaultive episode"). There was one victim. [BIC 43; AB 16] Considering these factors, we conclude the conduct was unitary. *See Sandoval*, 2025-NMCA-002, ¶ 37 (holding that the defendant's penetrating victim's anus and vagina with his penis and his touching the victim's breasts with his hand were unitary conduct because they occurred at the same time and there was no evidence to support a temporal separation between the two acts); *State v. Mora*, 2003-NMCA-072, ¶¶ 3, 18, 133 N.M. 746, 69 P.3d 256 (concluding there was unitary conduct when the defendant's acts of laying on top of the victim and then "humping" her took place in a short timeframe and in the same space).

**{23}** The State contends the two acts were distinct because they occurred to different parts of the Victim's body and the force used by Defendant to penetrate Victim's anus and the force used to touch Victim's vulva are different. [AB 17] These considerations, however, must be balanced with the other factors. Absent evidence of temporal gaps, location or position changes, intervening events or changes in intent, the fact that Defendant touched or penetrated different parts of Victim's body is not sufficient evidence to conclude that Defendant's acts were distinct. *See Herron*, 1991-NMSC-012, ¶¶ 13, 15 (viewing separate penetrations of the same or different body parts as part of the same assaultive episode unless there is proof that each penetration is distinct from the other); *State v. Valverde*, 2025-NMCA-024, ¶ 19, 576 P.3d 395 (holding that Defendant's touching of several locations of victim's body over a short period of time without intervening acts was unitary conduct), *cert. denied*, 2025-NMCERT-003 (S-1-SC-40704).

**{24}** Having concluded Defendant's conduct was unitary, we proceed to the second step of asking whether the Legislature "intended to create separately punishable offenses." *Swafford*, 1991-NMSC-043, ¶ 25. This Court has previously held that the Legislature did not intend for a defendant to be separately punished for CSPM and CSCM conduct. *See Mora*, 2003-NMCA-072, ¶ 27.

**{25}** We therefore conclude that Defendant's convictions for one count each of CSCM and CSPM violate double jeopardy, and consequently Defendant's conviction for CSCM must be vacated. *See State v. Gonzales*, 2007-NMSC-059, ¶ 10, 143 N.M. 25, 172 P.3d 162 ("If double jeopardy is violated, we must vacate the conviction for the lesser offense.").

**{26}** Accordingly, we affirm in part and reverse in part and remand for proceedings consistent with this opinion.

**{27}    IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Chief Judge**

**WE CONCUR:**

**MEGAN P. DUFFY, Judge**

**SHAMMARA H. HENDERSON, Judge**